HENRIETTA B. BROWN *vs.* CITY OF BOSTON.

Suffolk.    February 7, 1968. — March 5, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Taxation*, Assignment of tax title.  *Tenants by the Entirety.  Real Property*, Tenancy by the entirety.

A wife had, in real estate in a city owned by her and her husband as
tenants by the entirety, an interest which she was entitled to protect
against foreclosure of a tax title held by the city on the property; and
where she proposed that she pay to the city the full amount necessary
to redeem, that the tax title be assigned to her nominee and the
nominee be substituted for the city as petitioner in a pending proceed-
ing to foreclose the tax title, and that upon completion of the foreclo-
sure the nominee transfer the fee of the property to her, whereupon
she would give a mortgage thereof to secure a loan to her of money
paid to the city, it was held that, as against the city, she was entitled
in equity, upon making payment of the redemption amount to the
city, to compel it to make the assignment, but on the basis that neither
the city nor its officials would thereby incur any responsibility or
liability.

BILL IN EQUITY filed in the Superior Court on April 14,
1967.

The defendant appealed from a final decree entered after
hearing by *Brogna*, J.

*William H. Kerr* for the defendant.

*Robert L. Wise* for the plaintiff.

CUTTER, J.    For about forty-three years, Jethro and
Henrietta Brown, husband and wife, lived at 19 Claremont
Park, Boston (the locus), in a house which they have long
owned as tenants by the entirety.    Over two years ago
Brown moved to 35 Quincy Street.    Mrs. Brown remained
at the locus.    On May 19, 1965, the city filed in the Land
Court a petition to foreclose its tax lien on the locus (and
all rights of redemption) for an unpaid balance of 1961
taxes.    On December 2, 1965, the petition was taken as
confessed against Brown.

Mrs. Brown and the city have stipulated, with the ap-
proval of the Land Court, that she may redeem upon pay-
ment of $610.72 with interest and costs.    The city is willing

that redemption may take place up to and including the termination of the present suit in equity, brought in the Superior Court by Mrs. Brown, in effect to remove a cloud upon her title to (and interest in) the locus, by requiring the city, upon payment of the amount due to it for redemption to transfer its tax title to her nominee and to consent to the substitution of the transferee as plaintiff in the tax title foreclosure proceeding.

Mrs. Brown has made arrangements to borrow funds to liquidate the tax lien. She proposes that the loan be secured by a first mortgage on the locus, to be effected in the following manner. Under her plan, the tax title will be transferred to the lender. He will complete the Land Court foreclosure of the tax title and then transfer the fee in the locus to Mrs. Brown. She will give back to the lender a first mortgage to secure the loan. This arrangement is proposed because Brown refuses to join in placing a mortgage on the locus or to make any payment toward liquidation of the tax title. The city's collector of taxes has declined to assign the tax title.

The case was heard in the Superior Court upon a statement of agreed facts. A final decree was entered, in effect ordering that the title be assigned to Mrs. Brown's nominee and that Mrs. Brown's plan be carried out, upon the payment to the city of the amount owed to it for taxes. The city appealed.

The statute permitting assignments is G. L. c. 60, § 52, as amended by St. 1936, c. 392, § 1.[1] The city contends (a) that under the second sentence of § 52, the city treasurer

---

[1] Section 52 reads: "Cities . . . may make regulations for the possession, management and sale of land purchased or taken for taxes, not inconsistent with law or with the right of redemption. The treasurer of any city . . . holding a tax title, upon payment . . . of a sum not less than the amount necessary for redemption, *may* assign and transfer such tax title to any person and *may* execute and deliver on behalf of the city . . . any instrument necessary therefor. The treasurer shall send notice of the intended assignment to the owner of record at his last known address . . . . The instrument of assignment . . . shall be recorded within sixty days . . . . Except as hereinafter otherwise provided, all provisions of law applicable in cases where the original purchaser at a tax sale is another than the city . . . shall thereafter apply in the case of such an assignment, as if the assignee had been a purchaser for the original sum at the original sale or at a sale made at the time

has discretion to determine whether to assign a tax title; (b) that the situation is analogous to that existing between a mortgagor and a mortgagee; and (c) that there can be no severance of a tenancy by the entirety by the act of one spouse without the consent of the other. Mrs. Brown's proceeding is designed, of course, to avoid a forfeiture of her interest[2] in the tenancy by the entirety, despite Brown's apathetic attitude, by compelling the city to take action designed to assure payment of taxes owing to it without risk of liability on its part or on the part of its fiscal officials.

. 1. "The various methods set out in [G. L.] c. 60 of enforcing the tax or the [tax] lien . . . are all subsidiary to and in aid of the enforcement of the primary [tax] liability." See *Boston* v. *Gordon*, 342 Mass. 586, 592. The principal purpose of c. 60 is to ensure that the city will receive the taxes owed to it, with due observance of the provisions of the chapter made for the protection of the interests of taxpayers. See e.g. the procedural provisions of c. 60 prescribing for collecting officials and others methods of enforcing tax liabilities, and c. 60, § 62 (as amended through St. 1966, c. 263, § 1), permitting redemption of land from tax liens on stated and equitable terms. See also § 68, as amended through St. 1966, c. 263, § 2. Section 62 "brings out clearly . . . that the real purpose of a tax sale is to enable the city . . . to collect quickly the money needed to perform its many . . . functions and . . . that a tax title in spite of its paramount nature is, until the right of

---

of the taking and had paid to the city . . . the subsequent taxes and charges included in the sum paid for the assignment, provided that any extension of the time within which foreclosure proceedings may not be instituted granted by a city . . . treasurer prior to assignment shall be binding upon the assignee" (emphasis supplied). The legislation carried out a recommendation of the Commissioner of Corporations and Taxation that it was "advisable to provide . . . for the treasurers . . . to make such disposition [of tax titles] through assignment as will be the greatest benefit to the community." See 1936 House Docs. Nos. 10 (at p. 4), 366 and 1915; 1936 Senate Doc. No. 415, and amendments found in 1936 Senate Journal (March 2), p. 366, and 1936 House Journal (April 29), p. 1015.

[2] Although Mrs. Brown's interest during her husband's life is subject to the limitations inherent in the tenancy, it may have substantial value. See *Licker* v. *Gluskin*, 265 Mass. 403, 404–407; *Pineo* v. *White*, 320 Mass. 487, 490–491; *Sondheim* v. *Fenton*, 326 Mass. 28, 30. See also cases collected in Swaim, Crocker's Notes on Common Forms (7th ed.) § 120; Park, Conveyancing, § 129.

redemption is finally lost, in reality a lien, and that the holder of the right of redemption is really the owner of the land." See Nichols, Taxation in Massachusetts (3d ed.) 417. See also Hardy, Municipal Law, §§ 926, 929–932. It is consistent with the solicitude (in the matter of redemption) shown by §§ 62 and 68 for persons having an interest in land subject to a tax lien (see *West* v. *Selectmen of Yarmouth*, 345 Mass. 547, 550) to construe any discretion given to the city treasurer under § 52 (fn. 1) as limited to ensuring (a) that the city's ability to collect the tax is not worsened by an assignment of the tax title, and (b) that neither the city nor its officials are subjected to liability by the assignment.

We think that to require an assignment, where it will result not only in payment of the secured taxes but also in protecting a property interest in the land subject to the lien, necessarily promotes the statutory purpose and will be for "the greatest benefit to the community" (see final sentence of fn. 1). Accordingly, we see no statutory obstacle to equitable relief requiring an assignment to be made under § 52, where the city's interest in collecting its taxes will be promoted, and where the whole amount secured by the tax title will be paid at the time of the assignment. The decree ordering such an assignment may include appropriate terms making clear that the city and its treasurer assume no responsibility to the assignee or to any party to the equity proceeding or to any person claiming through the assignee or any such party.

2. The city relies on cases holding that a mortgagee cannot be compelled to assign a mortgage by a person entitled to redeem. See *Butler* v. *Taylor*, 5 Gray, 455, 456–457; *Lamb* v. *Montague*, 112 Mass. 352, 353; *Kerse* v. *Miller*, 169 Mass. 44, 48; *Gilpin* v. *Brooks*, 226 Mass. 322, 325. See also *Linsky* v. *Exchange Trust Co.* 260 Mass. 15, 17; *Broadway Natl. Bank* v. *Hayward*, 285 Mass. 459, 465. These cases do not seem to us to be controlling with respect to the statutory tax lien created only to enable a city to collect its taxes, subject to statutory provisions (already mentioned) for the protection of the owners of

interests in land subject to the lien. In the absence of explicit statutory language requiring us to do so, we do not construe § 52 as making it impossible, in accordance with equitable considerations, to require the treasurer to assign the tax title.

3. Mrs. Brown has a sufficient interest in the locus to permit its equitable protection. It is of no concern to the city that protection of Mrs. Brown's interest may involve destruction of Brown's interest in the tenancy by the entirety. That, in any event, would be destroyed by foreclosure of the tax title.

We need not now determine the effect, as between Brown and Mrs. Brown, of carrying out her plan. If execution of her plan is completed, she will hold the equity in the locus, which she will have preserved by her efforts and expenditures despite Brown's complete inaction. If Brown seeks to impose for his benefit any constructive trust upon her interest (see e.g. *MacNeil* v. *MacNeil*, 312 Mass. 183, 185), he certainly, as a condition of seeking that or other equitable relief, must first reimburse her for those expenditures on the principle that he who seeks equity must do equity. See *Spadea* v. *Stewart*, 350 Mass. 218, 222. It will be time enough, when and if he seeks such relief, to consider whether, despite the decree against him pro confesso in the foreclosure proceeding, she will hold the equity in the locus subject to any constructive trust for him, as was suggested at the arguments. It would be appropriate, however, even now to join Brown as a party in this suit and to afford him opportunity to be heard, so that there will be no doubt that he is bound by the decree.

4. The case is remanded to the Superior Court for further proceedings consistent with this opinion. If the city or Brown or Mrs. Brown shall so request within thirty days after the receipt of the rescript, the final decree may be vacated to allow Brown to be joined as a party and to afford to him opportunity to assert and protect any interest he may have in the locus. If no such request is made the final decree shall be affirmed.                    *So ordered.*