HENRY F. BODIO *vs.* PETER S. ELLIS & another[1]
(and a companion case[2]).

Worcester. March 4, 1987. — October 8, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Corporation,* Stockholder, Close corporation. *Fiduciary.*

Evidence before a master did not warrant his conclusion that an officer of a closely-held corporation had retired, in practical effect, from his duties with the corporation and was thus obliged to sell his stock pursuant to a buy-out agreement. [6-7]

Where a series of agreements among the shareholders of a closely-held corporation contemplated that two of the corporation's officers would be equal shareholders during the lifetime of the majority shareholder and would continue as such after his death, and where the equal status of the two officers was supported by a master's finding that they had received equal salaries and bonuses during the entire time they had been in the corporation's employ, the acquisition by one of the officers of two additional shares of stock, from an individual to whom the majority shareholder had transferred them so that he might act as "mediator," was to be set aside for equitable reasons grounded on the agreements

---

[1] Gordon A. Shaw.

[2] Karl A. Bright Insurance Agency, Inc. *vs.* Henry F. Bodio.

among the parties and on the fiduciary obligations owed one another by the shareholders of a closely-held corporation. [7-10]

The Superior Court was the appropriate forum for deciding what votes of the shareholders of a closely-held corporation, and what votes of its board of directors, were to be set aside as having been taken on, or having resulted from, the incorrect assumption that one of its shareholders held a majority of the stock. [10]

CIVIL ACTIONS commenced in the Superior Court Department on June 5, 1985, and August 5, 1985, respectively.

The cases were consolidated for trial and were heard by *Herbert F. Travers, Jr.,* J., on a master's report.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert D. Loventhal* (*Elizabeth Barrett* with him) for Henry F. Bodio.

*John P. Graceffa* for Peter S. Ellis & others.

O'CONNOR, J. Henry F. Bodio, an original shareholder of the Karl A. Bright Insurance Agency, Inc. (agency), commenced an action against Peter S. Ellis, a shareholder, officer, and director of the agency, and Gordon A. Shaw, also a shareholder and director, claiming that Ellis and Shaw, in violation of Bodio's rights, purported to transfer two shares of agency stock to Ellis so as to make Ellis the majority shareholder. The complaint also alleged that Ellis used his asserted control of the corporation to force Bodio into retirement and to "freeze" him out of the agency. Bodio sought a declaration that the transfer of the two shares to Ellis was invalid. He also sought an order requiring that those shares be returned to the treasury of the agency, and for further orders that would return Bodio and the agency to the status quo before the aforementioned actions were taken, and that would require Ellis and Shaw to refrain from further efforts to cause Bodio's retirement or to freeze him out of the agency.

The other action involved in this appeal was brought by the agency against Bodio for a declaration that, pursuant to an employment agreement between the parties, the significant details of which are set forth below, the agency "can retire

Bodio from his employment . . . or, alternatively, the Agency can pay Bodio an amount of no less than ten thousand dollars ($10,000) annually for that period of time which Bodio remains an employee of the [agency]." In that action, the agency also requested that the Superior Court declare valid a certain agreement, dated June 5, 1968, that would require Bodio to transfer his shares to the agency on retirement, and that the court determine the price of the shares. In addition, the agency sought a declaration of the validity and effect of a deferred compensation agreement between the agency and Bodio.

The two cases were consolidated for trial and referred to a master. After a hearing, the master issued his report containing subsidiary findings and conclusions. The master concluded that Bodio's "performance or lack thereof [was] not sufficient to warrant termination of his employment," but he also found that "Bodio has attained age 65 + and has retired from active duties," and that "the corporation has a right to retire Bodio and to require Bodio to sell his stock at the price determined by the formula and to pay to him the benefits provided in the deferred compensation agreement." The master further concluded that "Bodio is entitled to acquire one of the two shares now standing in the name of Ellis."

Bodio moved to strike portions of the master's report, including the conclusions that "Bodio has attained age 65 + and has retired from active duties," and that the agency has the right to involuntarily retire him and can require him to sell his stock at the price determined by the formula set forth in the agreement of June 5, 1968. That motion was denied. The agency, Ellis, and Shaw moved to confirm the master's report except for the master's conclusions and related subsidiary finding relative to Bodio's right to acquire one share of stock from Ellis. That motion was allowed. The judge thus adopted the view of the agency, Ellis, and Shaw, that Ellis was entitled to the two shares of stock in controversy. Thereafter, judgment was entered incorporating the master's conclusions except that the judgment provided that Bodio is not entitled to acquire any share standing in Ellis's

name.[3] Bodio appealed, and we transferred the case to this
court on our own initiative. We reverse the judgment entered
below, and remand for further proceedings consistent with this
opinion.

We summarize the master's subsidiary findings. The agency
was incorporated in Massachusetts in 1952 for the purpose of
writing, selling, and renewing insurance policies. The articles
of organization of the agency authorize the issuance of 1,000
shares of common stock, 450 of which were issued at the time
of incorporation, as follows: 300 shares to Karl A. Bright
(Bright); 105 shares to Bodio; and forty-five shares to one
Elsie C. Apicella. Additionally, the articles of organization
impose a restriction on the sale of shares which requires any
shareholder desiring to sell his or her stock to offer it first to
the directors of the agency. Bodio became an employee of the
agency in 1952, and in that year was elected both treasurer
and director. He held the office of treasurer until 1967, and
was then elected vice president, which office he still held at
the time of the hearing before the master in late 1985. Bodio
was a director until he failed to gain reelection in 1985. At
the time of the hearing, Bodio was seventy years old.

Ellis became an employee of the agency in 1960 and, in
1965, purchased Apicella's forty-five shares of stock. Three
years later, he acquired an additional sixty shares from Bright.
Consequently, in 1968, Bright owned 240 shares, while Bodio
and Ellis each owned 105 shares. Although not expressly found
by the master, the uncontroverted evidence indicates that, in
addition to being elected as director in 1967, Ellis succeeded
Bodio as the agency's treasurer that same year and, in 1982,
became its president. At the time of the hearing before the
master, Ellis was forty-nine years old.

The master made further findings with respect to certain
written agreements among the parties. At the hearing, the par-
ties stipulated to the admissibility and authenticity of those
agreements. On June 5, 1968, the agency, Bright, Bodio, and

---

[3] We attach no significance to the fact that a duplicate judgment was
entered in the action by the agency.

Ellis agreed that, "[u]pon his retirement from the active service" of the agency, or his death, if Bright should not then be living and Ellis should continue to be employed by the agency, Bodio or his estate would sell to Ellis sufficient shares to give Ellis majority control of the agency. The agreement made similar provision for protecting Bodio's majority status in the event of Ellis's death or "retirement from the active service" of the agency. A formula was provided by which the sale price of the shares would be computed.

On March 7, 1973, Bodio entered into an employment agreement with the agency as its vice president, and Ellis entered into a like agreement as treasurer. It was agreed that Bodio and Ellis would be paid such salary as the directors might determine, but not less than $10,000 annually, that each would have such reasonable responsibilities as the directors might determine, and that each would devote his "entire time and ability to the management" of the agency. The agreements further provided: "3. The Company shall have no right to terminate your employment except for a breach by you of the terms of this Agreement or for cause. 'Cause' shall be defined as active misconduct on your part. 4. Except as provided in Paragraph 3, this Agreement shall remain in effect, and your employment shall continue until the first to occur of the following events: (a) you reach age sixty-five (65) and retire from your active duties with the Company; (b) you become permanently disabled; (c) your death; or (d) following the death of Karl A. Bright by your giving the Company sixty (60) days' written notice of termination."

Also on March 7, 1973, the agency, Bright, Bodio, and Ellis executed an agreement providing that Bodio and Ellis would each acquire one-half of Bright's shares of stock upon Bright's death. The agreement recited that, as of the date of its execution, Bright owned 238 shares of stock, Bodio and Ellis 105 shares each, and Shaw two shares. In addition, the agreement provided that "[t]o the extent necessary to carry out the terms of this Agreement, the parties waive any restrictions upon the transfer of Company shares contained in the Company's Articles of Organization."

On December 11, 1973, a deferred compensation agreement was entered into between the agency and Bodio which, among other things, sets forth the benefits to be received by Bodio upon his retirement on or after age sixty-five.

The master found that, in 1972 (thus, before the March 7, 1973, agreement last referred to), Bright transferred two shares of stock to Shaw "for the purpose of enabling Attorney Shaw to act as a mediator between Ellis and Bodio in the event of disagreements between them in running the corporation." The master further found that, in October, 1974 (thus, after the March 7, 1973, agreements), "upon instructions from [Bright], Shaw assigned the two shares of stock to Ellis. . . . As a result, [Bright] now held 238 shares, Ellis 107 shares and Bodio, 105 shares. . . . In addition, Shaw signed an assignment which acknowledged that if the assignment was ineffectual he held the two shares as trustee. for Ellis."

The master also found that, from the time Ellis became a shareholder, he and Bodio received equal salaries and bonuses; that Bright died in 1981 and Bodio and Ellis exercised their rights to purchase Bright's stock, each purchasing 119 shares, and that, by virtue of the transfer of Shaw's two shares to Ellis, Ellis became the majority shareholder. As to those two shares, the master found that, at a meeting in Shaw's office in October, 1978, Bodio was informed for the first time of Bright's intention to cause the two shares to be transferred to Ellis. Bodio objected and left the meeting, "stating that such transfer violated the representation that Bright had made that neither Bodio nor Ellis would be the majority stockholder but would be equal." In 1983, according to the master, the agency requested Bodio to retire and he refused.

The first issue is whether the master was warranted in concluding that Bodio had "retired from active duties," and that "the corporation has a right to retire Bodio and to require Bodio to sell his stock at the price determined by the formula and to pay to him the benefits provided in the deferred compensation agreement." There were no subsidiary findings that warranted those conclusions. See Mass. R. Civ. P. 53 (g) (1), as appearing in 386 Mass. 1236, 1241 (1982) ("The master's report will

contain the master's general finding upon each issue . . . and will include and clearly identify the subsidiary findings upon which each general finding is based. No general findings will be presumed by the court to be supported by subsidiary findings which are not stated in the report as the basis therefor"). Furthermore, we are satisfied that the master's conclusions were not warranted by the evidence before him.

The agency, Ellis, and Shaw do not argue that Bodio retired simply by reaching his sixty-fifth birthday, nor, in light of the master's conclusion that termination of Bodio's employment was unwarranted, do they argue that Bodio's retirement could have been other than voluntary. Rather, they argue that, although Bodio did not formally announce his retirement, the evidence warranted a finding of "de facto" retirement. We disagree. While there was evidence that Bodio had discussed the possibility of reducing his work week, that he did not put in full days, that he attended only one monthly sales meeting over a three-year period, that he was not the agency's number one business producer, and that his volume of renewals had declined, that evidence does not warrant a finding that Bodio had retired. It follows that he was not required to sell his stock.

The next issue we address is who is the rightful owner of the two shares of stock transferred by Bright to Shaw in 1972 and by Shaw to Ellis in 1974. At the outset, we agree with the judge that, contrary to the master's conclusion, the two shares were not subject to the March 7, 1973, agreement giving Bodio and Ellis the right to acquire one-half of Bright's stock upon Bright's death because Bright did not own those two shares at the time of his death. Therefore, as the judge ruled, Bodio was not entitled to purchase one of the shares standing in Ellis's name.

Of course, our conclusion that Bodio was not entitled to purchase one of the two shares standing in Ellis's name does not resolve the question whether Ellis was the rightful owner of those shares and was, therefore, the majority shareholder after Bright died in 1981. We conclude that Ellis did not become the rightful owner of those shares.

On the issue of the stock ownership, the parties have devoted substantial argument to the effect of the stock transfer restrictions contained in the articles of organization on the stock transfers from Bright to Shaw and from Shaw to Ellis. We agree with the agency, Shaw, and Ellis that Bodio waived any objection to the transfer from Bright to Shaw by signing the 1973 stock purchase agreement which specifically acknowledged Shaw's ownership of the two shares. However, in deciding whether Ellis rightfully acquired Shaw's shares, we need not pursue the question whether the stock transfer restriction should be applied to invalidate the transfer. For the purpose of our decision, we assume that the transfer should not be invalidated by Shaw's failure to offer the shares to the directors before transferring them to Ellis. Even so, we conclude that the transfer from Shaw to Ellis must be set aside for equitable reasons grounded on the agreements between the parties and the fiduciary obligations owed to one another by shareholders of a close corporation.

Bodio owned 105 shares in the agency from the time of its incorporation. In 1965, Ellis purchased Elsie C. Apicella's forty-five shares, and in 1968 Ellis acquired sixty shares from Bright, thus equalizing Bodio's and Ellis's holdings. Also in 1968, Bodio and Ellis agreed that if one of them should die or resign after Bright's death, the survivor would be entitled to purchase sufficient shares to give him control of the corporation. That agreement implies that, until Bodio's or Ellis's retirement or death, their stock ownership would remain equal. The same understanding is reflected in the 1973 stock purchase agreement providing that Bodio and Ellis would each acquire one-half of Bright's stock on Bright's death. In their brief, the agency, Ellis, and Shaw correctly state that "[a]t the time of the execution of [the June 5, 1968,] agreement Karl Bright intended [Bodio] and Ellis to be equal shareholders in the Agency after he retired or died. The Stock Transfer Agreement executed in 1973 futher reflects this intent." Pursuant to the court's power to draw inferences from the master's subsidiary findings, provided in Mass. R. Civ. P. 53 (h), as appearing in 386 Mass. 1236 (1982), we infer that it was not only Bright's

intention, but it was Bodio's and Ellis's reasonable expectation as well, that Bodio and Ellis would be equal shareholders not only before Bright died but afterwards also. The master's finding that, from the time Ellis became a shareholder, Ellis and Bodio received equal salaries and bonuses, gives further support to the conclusion that the parties anticipated a continuation of their equal status.

As found by the master, Bright's transfer of two shares to Shaw was simply to enable him to act as a "mediator between Ellis and Bodio in the event of disagreements between them in running the corporation." It is apparent that Bright did not intend, nor did Bodio or Ellis understand, that that transfer would upset the contemplated balance of power between Bodio and Ellis.

We agree with the statement in the brief filed by the agency, Shaw, and Ellis, that "[t]he actions pursued by Karl Bright after March 7, 1973 [particularly Bright's 1974 directive to Shaw to transfer the two shares to Ellis], evidence a decided change of [Bright's] heart." However, we also conclude that that action violated Bright's fiduciary duties to Bodio. The agency is a close corporation. *Donahue* v. *Rodd Electrotype Co.,* 367 Mass. 578, 585-586 (1975). The shareholders in a close corporation owe to each other duties of the utmost loyalty, trust, and confidence. *Id.* at 594-597. In *Hallahan* v. *Haltom Corp.,* 7 Mass. App. Ct. 68 (1979), the two plaintiffs and two of the defendants began a business venture, and soon thereafter they incorporated, "intending that there be four equal shareholders." *Id.* at 69. The corporation issued one hundred shares of stock, 23¾ shares to each plaintiff and two of the defendants and five shares to one David Thompson as partial payment for carpentry work he had performed for the business. The four venturers agreed that Thompson would not actively participate in the business. After incorporation, Thompson signed a proxy in favor of one of the defendants, and then the defendants, voting their shares and Thompson's, fired the plaintiffs as employees of the corporation. *Id.* at 69-70. The trial judge ordered Thompson to return his five shares to the corporation in exchange for $500.

*Id.* at 70. On Thompson's appeal, the Appeals Court affirmed the judgment.

In *Hallahan,* the Appeals Court reasoned as follows: The judge's order "restored the balance of control among the [plaintiffs] and the [defendants] which the trial judge found the parties had envisioned and which they had a fiduciary duty to each other to maintain. The action of the trial judge was consistent with the generic similarity of the duties of stockholders in a close corporation to each other and partners in a partnership which the *Donahue* [, *supra,*] and [*Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842 (1976)] decisions have defined. A court exercising traditional equity powers has power to remedy the wrong complained of and to make the decree effective. *Nigro* v. *Conti,* 319 Mass. 480, 484 (1946)." *Id.* at 71.

The reasoning of the Appeals Court applies with equal force to the present case. Bright's instruction to Shaw to assign his shares to Ellis, thereby setting up Ellis to be the majority shareholder after Bright's death, was a clear contravention of Bodio's rightful expectation that he would have equal control with Ellis, and constituted a violation of the loyalty and fiduciary duty owed between the shareholders. We reject the argument that Bodio's claim is barred by the doctrine of laches. The wrong to Bodio ought to and can be corrected, as was the similar wrong in *Hallahan,* by an order that Ellis return to the agency the two shares he received from Shaw. Therefore, such an order shall be entered in the Superior Court as part of a final judgment. The Superior Court, on remand, will determine the appropriate compensation, if any, to Shaw.

Bodio requests that this court invalidate various actions taken by the shareholders and the directors after Ellis asserted his status as majority shareholder. We think that, at least initially, the Superior Court, assisted by counsel for the parties, is the appropriate forum for deciding which shareholder votes and which votes of the board of directors ought to be set aside as having been taken on, or having resulted from, the incorrect assumption that Ellis was majority shareholder.

The judgment of the Superior Court is reversed. The case is remanded to the Superior Court for further proceedings and for the entry of judgment consistent with this opinion.

*So ordered.*