RAFAELE L. DEMOULAS, administratrix,[1] & others[2] *vs.*
TELEMACHUS A. DEMOULAS & others[3]
(and two companion cases[4]).

Nos. 01-P-248, 01-P-1798, & 01-P-1811.

Middlesex. September 20, 2002. - February 26, 2003.

Present: RAPOZA, KASS, & MILLS, JJ.

*Judgment,* Enforcement, Methodology. *Corporation,* Transfer of shares,
Stockholder's derivative suit. *Taxation,* Deduction from income, Interest
and penalties. *Practice, Civil,* Judgment.

In proceedings to enforce a judgment rendered in a stock transfer action, the
judge did not abuse her discretion in using the services of a professional
accountant and in employing the "with and without" methodology to
calculate the personal income taxes that had been paid by the defendants
on earnings attributable to shares of stock and partnership interests which
the judgment required them to transfer to the plaintiffs, given that (1) an
earlier decision of the Supreme Judicial Court in this case left the method
of computation of the credit for taxes paid to the judge's determination
with the participation of the parties; (2) calculations of taxes and credits,
and methodology therefor, required the participation of professionals
competent in accounting and tax law; (3) the transactions, including the
filed tax returns, were very complicated; (4) there were divergent expert
opinions; (5) there was no clear evidence that the calculation method was
unfair; (6) a method proposed by an individual defendant, which involved
a change in filing status, was only one of several alternate computation
methods; and (7) the individual defendant and his wife in fact filed their
tax returns for the years in question using the filing status ultimately
employed by the judge. [462-463]
In proceedings to enforce a judgment rendered in a stock transfer action, the
judge erred in ordering the defendants to pay over the benefit of certain

---

[1]Of the estate of Evan G. Demoulas and as next friend of Vanessa Evan
Demoulas.

[2]Diana D. Merriam, Fotene J. Demoulas, Arthur S. Demoulas, and Evanthea
Demoulas.

[3]Arthur T. Demoulas, Glorianne D. Farnham, Caren D. Pasquale, Frances
D. Kettenbach, and Demoulas Super Markets, Inc.

[4]Rafaele L. Demoulas, administratrix, & others *vs.* Telemachus A. Demou-
las & others; Arthur S. Demoulas *vs.* Demoulas Super Markets, Inc., & others.

interest deductions on their personal income tax returns to the plaintiffs, where, although an earlier decision of the Supreme Judicial Court in this case had anticipated that tax credits to the defendants might result in further tax benefits to them and that such benefits should be tracked to make certain that those benefits were also transferred to the plaintiffs, the particular interest deduction benefits at issue were simply too attenuated from the wrongdoing to be included. [464-466]

In proceedings to enforce a judgment rendered in a derivative stockholder action, the judge properly denied a plaintiff's request that the defendants pay to the plaintiffs the benefits of the defendants' individual income tax deductions resulting from a reimbursement and indemnification to the corporation of attorney's fees that the corporation had initially paid for the defendants' defense in the derivative action. [466-467]

CIVIL ACTIONS commenced in the Superior Court Department on April 5, 1990, and April 30, 1990.

Following review by the Supreme Judicial Court, 424 Mass. 501 (1997), 428 Mass. 543 (1998), 428 Mass. 555 (1998), and 432 Mass. 43 (2000), further proceedings were had before *Maria I. Lopez,* J.

*Barnet Phillips, IV,* of New York (*Andrea S. Barisano* with him) for Telemachus A. Demoulas & others.

*Thomas S. Fitzpatrick* (*Robert C. Gerrard & Carol R. Cohen* with him) for Rafaele L. Demoulas & others.

MILLS, J. In 1990, members of the George A. Demoulas family commenced two separate but related civil actions, *Demoulas v. Demoulas Super Mkts., Inc.* (which has come to be known as "the derivative action"), and *Demoulas v. Demoulas* (the "stock transfer action"). A complete narrative of the family history, the identity of the parties (individuals and entities), the nature of the plaintiffs' claims, the procedural history of the cases, the issues raised on appeals, the decisions thereon, and the background for the three appeals being decided today appear in four decisions of the Supreme Judicial Court.[5]

In the two 1990 actions, the plaintiffs claimed, inter alia, that

[5]Those decisions involved (in chronological order) the appeal from the judgments in the derivative action, *Demoulas v. Demoulas Super Mkts., Inc.,* 424 Mass. 501 (1997) (*Demoulas I*); the appeal from an order denying the judge's recusal and a judgment in the same action, *Demoulas v. Demoulas Super Mkts., Inc.,* 428 Mass. 543 (1998) (*Demoulas II*); the appeal from a judgment in the stock transfer action, *Demoulas v. Demoulas,* 428 Mass. 555 (1998) (*Demoulas III*); and cross appeals concerning issues arising from

the defendants (other family members and family entities controlled by the defendants), by unlawful means and in breach of trust, had taken business advantages, ownership interests, and money distributions unfairly and disproportionately, depriving the plaintiffs of money, stock, and partnership interests in the family businesses. The plaintiffs prevailed, generally, in their claims, and judgments in each action entered in their favor which essentially ordered the defendants to return (disgorge) to the plaintiffs profits and other distributions that had been unlawfully obtained, and to return to the plaintiffs stock and partnership interests that had been unlawfully taken from them and transferred to the defendants in violation of trust. Subsequent to instructions on remands and further proceedings, several orders were entered to effect the judgments. The orders directed payments and calculations of credits among the parties.

In these appeals, (a) individual defendant Telemachus A. Demoulas (Telemachus) complains of the trial judge's use of a certain accounting methodology in an order requiring Telemachus to make further payment in the stock transfer action (the methodology claim); (b) the defendants complain of an order in the same case that they pay over the benefit of certain interest deductions (on their personal income tax returns) to the plaintiffs (the interest claim); and (c) individual plaintiff Arthur S. Demoulas (Arthur) claims error in the judge's refusal to order the defendants to pay to Demoulas Supermarkets, Inc. (DSM), the benefit of personal income tax deductions resulting from their payment of attorney's fees (the attorney's fees deduction claim).

We affirm the judge's orders on the methodology and attorney's fee claims, and reverse the order as to the interest claim.

1. *The methodology claim (in the stock transfer action).*

a. *Background.* In August of 1996, the judge issued an order which, in pertinent part, rescinded all of the transfers of stock and partnership interests at issue and ordered the defendants to pay over to the plaintiffs the distributions that had been received by the defendants while they unlawfully held those stock and

further proceedings ordered in *Demoulas III* in the stock transfer action, and appeal of orders denying recusal in both cases, *Demoulas* v. *Demoulas*, 432 Mass. 43 (2000) (*Demoulas IV*).

partnership interests. In connection with that order, the accounting firm of Deloitte & Touche, LLP (the accountant), was instructed to investigate and determine the amounts to be paid. The judge accepted that determination as accurate and based on correct methodology. Accordingly, after further proceedings, the judge ordered entry of a judgment consistent with her earlier order of August 20, 1996. That order required the defendants to repay gross amounts of distributions to the plaintiffs, without tax or other credits.

The defendants then sought alteration of the judgment and, while a motion to that end was pending, the Supreme Judicial Court issued its decision in *Demoulas I*, which held, in pertinent part, that the individual defendant-stockholders (in the companion shareholder derivative action), who were required to pay distributions they had received from certain defendant companies, were entitled to a credit for taxes paid by them on those earnings because:

> "the objective in addressing unjust enrichment is to recover simply the amount derived from the wrongdoing. Where a corporate opportunity has been wrongfully diverted . . . , we have required the transgressor to repay only net profits, not the gross income from sales. . . . '[T]axes . . . are as much a proper allowance against the gross profit as is any other cost obligation incurred in generating that profit.' " (Citations omitted.)

*Demoulas I*, 424 Mass. at 558.[6] The defendants then argued that the judgment in the stock transfer case should only require them to pay the net, rather than gross, amount of the distributions, allowing a credit for the taxes paid by them on the earnings of Subchapter S companies and partnerships.

The trial judge, in response, and in reliance upon *Demoulas I*, directed the accountant to calculate the personal income taxes that had been paid by the defendants on the earnings attributable to shares of stock and partnership interests that the judgment required them to transfer to the plaintiffs. On the basis of

---

[6]"On remand, the defendants have the responsibility for documenting and proving their claims to tax deductions and proposing a workable method of preventing further unjust enrichment." *Demoulas I*, 424 Mass. at 558-559.

those calculations, the judge ordered entry of an amended judgment. Thereafter, several postjudgment matters were raised and determined, including appeals to this court and the Supreme Judicial Court. Subsequent to *Demoulas IV*, a second amended judgment was entered on August 8, 2000, which directed that Telemachus's tax credit be further calculated by the accountant. On November 22, 2000, the accountant, long acquainted with the circumstances of these cases, see part 1.c., *infra*, issued a final report which included refined calculations of the tax credit due to Telemachus and an additional payment due from him to the plaintiffs. The judge, after hearing, issued an order in which she "defer[red] to [the accountant's] use of [a methodology explained below, known as] the with and without accounting principles analysis . . . ."

Telemachus complains that the order, adopting the "with and without" methodology (as recommended by the accountant) rather than another methodology recommended by him, requires him to repay to the plaintiffs more than his net gain. We hold that the judge's order was not clearly erroneous, and affirm her selection among alternative calculation methodologies.

b. *The "with and without" methodology.* This methodology starts with the defendants' filed tax returns for all relevant years.[7] These are the "with" returns for the accountant's purpose. The income attributable to the interests being returned to the plaintiffs is then removed from a defendant's return in each relevant year, and the tax that should have been due on this reduced income is calculated (recalculated). This is the "without" calculation. The "without" tax is subtracted from the "with" tax to arrive at a tax credit due to an individual defendant in a specific tax year of the relevant years. In computing the "without" tax for Telemachus, over his objection, the accountant did not alter anything on the return other than the gross income numbers. And, while utilization of the "with and

---

[7]For purposes of this discussion and our decision, "relevant years" means prior years during which the defendants received, and presumably reported, income subject to the disgorgement order, but which years are beyond the three-year limitation for the amendment of tax returns and are not susceptible to adjustment or recoupment. In brief, they are the years that are "closed" to reexamination, amendment, or carry-forward credit, as a matter of Federal tax law and regulation.

without" methodology is not seriously disputed, Telemachus complains that for the method to be fair, and consistent with the principles set forth in *Demoulas I*, the returns must be calculated as though he had filed joint tax returns with his wife, rather than as he elected at the time the returns were filed — married, filing separately. There is no dispute that if the "without" calculations were prepared with only his filing status thus amended, his reconstructed tax would be less, and his tax credit greater, and the amount due the plaintiffs reduced.[8]

c. *The accountant and its recommendation.* In 1995, after the conclusion of both trials, the accountant was selected as an independent advisor, nominated by the successful plaintiffs, and ordered by the court to oversee the DSM daily business operations, investigate and analyze DSM's accounts, and assist in calculating the dollar amounts required by the judgments. No objection to the initial appointment and directives appear, and the accountant became an integral part of the posttrial proceedings, frequently reporting to the judge and taking part in negotiations, conferences, and court hearings. The accountant, after a process that evidences full consideration of Telemachus's arguments, recommended to the judge a calculation without a change in filing status (or any other change), commenting that the recommended methodology was consistent with the basic principles of a "with and without" methodology and stating, "[i]n our [*sic*] calculations, we have removed the relevant income only. To adjust other attributes of these tax returns would not be an accurate representation of the 'without' situation."[9]

---

[8] The reasons for the disparity need not be completely discussed for current purposes. Suffice it to say that the method ordered by the judge involved aspects of the 1986 Internal Revenue Code, subtitle A, c. 1A, pt. 6, entitled "Alternative Minimum Tax," 26 U.S.C. §§ 55-59, and the reconstructed "without" tax liability was greater than it would have been if the filing status had also been altered.

[9] The accountant, in its report to the court, also stated:

"In these calculations, we have adjusted the state and federal income tax returns of [Telemachus] and the Defendant Children to remove the income related to the DSM shares and [partnership] interests being transferred to certain of the plaintiffs. This methodology, the 'with and without,' is consistent with our previous analyses in this matter. We

The judge ordered calculation according to the accountant's recommendation.

d. *Discussion.* Telemachus frames the appeal by complaining that the tax credit has been improperly reduced, thereby requiring him, contrary to *Demoulas I*, to repay more than his actual net gain to the plaintiffs. His arguments are that (1) utilization of his methodology would require that he only pay his net gain (thus consistent with the Supreme Judicial Court decisions); (2) the accountant's method is fundamentally flawed because no competent accountant preparing tax returns for the relevant years at the reduced income levels would have elected a status of "married, filing separately"; (3) the method ignores a basic assumption — that a taxpayer makes all elections to minimize tax payable; and (4) the judge abdicated her judicial responsibility and allowed the accountant, essentially, to make her judicial decision for her.[10]

We frame the issue differently: whether the judge's method of calculation was an abuse of discretion given the following circumstances: (1) there was no specific formula or method directed by the Supreme Judicial Court when credit for taxes was ordered; the method of computation was left to the judge's

believe that it would be inappropriate to adjust any other aspect of these filed income tax returns. Accordingly, we have not made any such adjustments for items such as possible changes in filing status, under- or over-statement of deductions (if any) or the characterization of income, or included the effect of any other possible changes in tax attributes of these individuals, such as change in residence or personal circumstances that might have resulted from the removal of such income."

[10]Telemachus cites *Demoulas IV*, 432 Mass. at 67-68; *Brown* v. *Boston*, 353 Mass. 740, 744 (1968); Restatement of Restitution § 158 (1937); and *Clark* v. *Commissioner*, 40 B.T.A. 333 (1939), to support his argument. However, those authorities are not controlling, nor do they persuade us that the judge's exercise of discretion was incorrect. The cases say nothing specific as to the method of calculation, other than that the method be fair and reasonable, and consistent with the principles of unjust enrichment. So it is with *Brown* v. *Boston*, 353 Mass. at 744, which states the traditional rule, "he who seeks equity must do equity," again saying nothing as to the calculation method. Neither the Restatement of Restitution nor the Board of Tax Appeals case offer any further assistance on the ultimate question: was the method of calculation adopted by the judge fair and reasonable in the circumstances?

determination with the participation of adverse parties (with adverse interests); (2) calculations of taxes and credits, and methodology therefor, required the participation of professionals competent in accounting and tax law; (3) the transactions, including the filed tax returns, were very complicated; (4) there were divergent expert opinions; (5) there is no clear evidence that the calculation method is unfair (other than Telemachus's assertion that his particular method would result in a greater savings for him); (6) Telemachus's method, which involved a change in filing status, was only one of several alternate computation methods[11]; and (7) Telemachus and his wife in fact filed their tax returns for the years in question as "married, filing separately."

"We examine the judge's imposition of equitable remedies under an abuse of discretion standard." *Demoulas III*, 428 Mass. at 589, citing *Bodio* v. *Ellis*, 401 Mass. 1, 10 (1987); *EEOC* v. *Steamship Clerks Union, Local 1066*, 48 F.3d 594, 608 (1st Cir.), cert. denied, 516 U.S. 814 (1995). See *Demoulas III*, 428 Mass. at 590-591. Telemachus has failed to demonstrate an abuse of discretion.

2. *The interest claim (in the stock transfer action).*

a. *Background.* When the defendants were ordered to pay back the distributions wrongfully received, they were also ordered to pay interest at the rate of six percent to the date of payment. They did pay that interest. During the course of further proceedings, the plaintiffs reviewed certain of the defendants' tax returns and noted that the defendants were seeking a personal income tax deduction for the interest repaid to the plaintiffs (in the stock transfer case) and for attorney's fees paid to DSM (in the derivative case). Thus alerted, the plaintiffs, by a second emergency motion to enforce judgment, asked the judge to order the defendants to make additional payments to

---

[11]A principal example involves Telemachus's Federal tax deductions during the relevant years for State income taxes paid by him during the relevant years, utilizing the plaintiffs' monies. The plaintiffs argued that these Federal deductions on his returns for the years should also be altered. However, the accountant did not so recommend, nor did the judge's order direct this or any other alterations. In brief, there were several attributes, in addition to filing status, that could conceivably have been altered or reconstructed.

the plaintiffs for "all tax credits obtained as a result of the defendants' payment of interest, costs, and attorneys' fees."

Insofar as tax credits for the interest payments is concerned, the judge, relying upon the language from *Demoulas I*:

> "we have recognized that, where such a deduction is allowed for taxes, it will be necessary to track any tax benefits received by a defendant resulting from repayments made to a plaintiff, and to ensure that those tax benefits are also transferred to the plaintiff. Otherwise, unjust enrichment would still occur[,]"

*Demoulas I*, 424 Mass. at 558, and her own language from the second amended judgment following rescript:

> "For three years from the date of this amended judgment following rescript, the individual defendants will pursue prospective tax benefits, will submit their tax returns to the plaintiffs and will immediately pay to the plaintiffs any future tax benefits obtained as a result of the execution of this amended judgment following rescript[,]"

determined "that transferring the tax benefits gained by deductions or credits for the payment of interest is consistent with the courts' previous orders. Only by paying over any and all tax benefits derived from the interest will the defendants be able to return the plaintiffs to the position they would have been in had the defendants not engaged in the acts that formed the basis of these cases." The judge further commented that ordering the defendants to pay over such tax benefits would serve an effective deterrent purpose; and although she acknowledged that the tax benefits might provide a windfall for the party receiving them, she found "it would be more appropriate to grant such benefits to the plaintiffs."

b. *Discussion.* The defendants wrongfully took and held stock and interests and took periodic distributions which they used for their own purposes. They paid individual income taxes on the distributions according to partnership and Subchapter S requirements. As ordered by the court, they retransferred the stock and partnership interests, paid back the distributions, and paid interest on the distributions with a credit for income taxes paid. All of that returned property, including the interest, belonged to the plaintiffs.

Additionally, they were ordered to seek further tax benefits prospectively and "immediately pay to the plaintiffs any future tax benefits obtained as a result of the execution of [the] amended judgment following rescript." The court in *Demoulas I* anticipated that the tax credits to the defendants either would, or might, result in further tax benefits to the defendants, and while not directing that such benefits be sought, did direct that the benefits be tracked "to ensure that those tax benefits are also transferred to the plaintiff [as] [o]therwise, unjust enrichment would still occur." *Demoulas I*, 424 Mass. at 558.

We conclude that the judge was not correct, and that her order was not reasonably consistent with the Supreme Judicial Court's previous orders.

The governing principles of the several *Demoulas* decisions instructed that (1) equitable principles are to be applied to return the aggrieved plaintiffs to the status quo, see *Demoulas III*, 428 Mass. at 590; (2) the wrongdoer is to disgorge benefits wrongfully obtained, see *Coggins* v. *New England Patriots Football Club, Inc.*, 397 Mass. 525, 535-536 (1986), *S.C.*, 406 Mass. 666 (1990); and (3) the transgressor is to repay net, as opposed to gross, amounts, so as to effect remedy for unjust enrichment, "to recover simply the amount derived from the wrongdoing." *Demoulas I*, 424 Mass. at 558, citing *USM Corp.* v. *Marson Fastener Corp.*, 392 Mass. 334, 338-339 (1984). The judge's order went impermissibly beyond these principles.

The defendants further argue that the Supreme Judicial Court, in stating that it is "necessary to track any tax benefits received by a defendant resulting from repayments made to a plaintiff, and to ensure that those tax benefits are also transferred to the plaintiff," *Demoulas I*, 424 Mass. at 558, was speaking to tax benefits arising from cash distribution repayments required by the judgment and not all payments required by the judgment, including those unrelated to the tax credit such as interest payments.

The defendants rely upon *USM Corp.* v. *Marson Fastener Corp.*, *supra* at 346, and the court's discussion of *Schnadig Corp.* v. *Gaines Mfg. Co.*, 620 F.2d 1166, 1169-1171 (6th Cir. 1980). We find the defendants' argument persuasive: the court in *Demoulas I*, like the court in *USM Corp.* v. *Marson Fastener*

*Corp.*, was concerned that the defendants not come out of the case with a profit. It appears to us unreasonable to equate the interest deduction benefit with the "after-tax profits" identified by the court in *USM Corp.* v. *Marson Fastener Corp., supra.* The deduction benefits are simply too attenuated from the wrongdoing.

3. *The attorney's fees deduction claim (in the derivative action).* Relying upon the language in *Demoulas I, supra* at 558, and the language of the second amended judgment requiring, inter alia, that the individual defendants "immediately pay to the plaintiffs any future tax benefits obtained as a result of the execution of this amended judgment following rescript," plaintiff Arthur S. Demoulas, by emergency motion, sought an order requiring Telemachus and other individual defendants to pay to the plaintiffs the benefits of the defendants' individual income tax deductions resulting from a reimbursement and indemnification to DSM of attorney's fees that DSM had initially paid for the defendants' defense in the derivative action.

In her order denying the request, the judge noted that the defendants paid legal fees to the corporation, DSM, as reimbursement and indemnification after DSM had initially paid the fees. The judge also noted that the transfer of these tax benefits would not satisfy the purpose and intent of the second amended judgment, and she further relied upon authority of the "American rule," i.e., that parties to a litigation are responsible for their own legal fees unless the court orders otherwise, citing *Police Commr. of Boston* v. *Gows*, 429 Mass. 14, 17-19 (1999). The judge stated that these "plaintiffs would not be entitled to recover any of the legal fees paid by the defendants, and therefore, should not be entitled to any other benefits that the defendants derive from the payment of their own legal fees." The judge also noted, and we think correctly, that there is really no difference between legal fees paid directly by the defendants, or indirectly by way of reimbursement to DSM. In either case, the defendants are using their own money to pay their own defense costs. We also find no merit to the plaintiff's argument (and reliance upon *USM Corp.* v. *Marson Fastener Corp., supra*) suggesting that the tax deduction, if retained by the defendants, somehow constitutes a profit to the defendants. We

further reject the plaintiff's argument that the attorney's fees deductions were intended by the court in *Demoulas I*, 424 Mass. at 558, to constitute a "tax benefit[] received by a defendant resulting from repayments made to a plaintiff." It seems clear to us that the court was not instructing that this type of personal income tax deduction be tracked and accounted to the plaintiffs. Further, the payment to DSM is not a payment to "a plaintiff." DSM is a defendant in the derivative case. Finally, we find no legitimacy to the plaintiff's characterization of the attorney's fee tax deduction as a windfall.

*So ordered.*