THOMAS E. GOODE, administrator,[1] *vs.* JOHN W. RYAN, JR., & others.[2]

Suffolk.  November 6, 1985. — March 12, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & LYNCH, JJ.

*Moot Question. Practice, Civil,* Moot case. *Corporation,* Stockholder, Purchase by corporation of its stock, Close corporation. *Fiduciary.*

An action presenting the question whether the administrator of the estate of a minority shareholder in a close corporation was entitled to have the decedent's minority interest purchased or redeemed within a reasonable time after the administrator's appointment in 1977 was not rendered moot by the fact that in 1983 and 1984 the administrator had received the estate's pro rata portion of the corporation's liquidating distributions in exchange for the surrender of the decedent's shares. [88-89]

The fiduciary obligation that the shareholders of a close corporation owe one another does not require the majority shareholders to purchase, or to cause the corporation to purchase, the shares of a minority shareholder on the death of that shareholder. [89-92]

CIVIL ACTION commenced in the Superior Court Department on November 22, 1982.

The case was heard by *Thomas R. Morse, Jr., J.,* on a motion for partial summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Thomas E. Goode (John J. Walsh, Jr.,* with him) for the plaintiff.

*Alan B. Rubenstein (Peter Friedenberg* with him) for the defendants.

---

[1] Of the estate of Alice M. Marr.

[2] Constance Ryan Eagan, William A. Eagan, Jr., Lillian Hodges, John D. Hodges, John D. Hodges, Jr., Irene Ready, individually and as administratrix of the estate of Timothy Ready, James A. Ryan, North Shore Management & Investment Co., Gloucester Ice & Cold Storage Co., and George L. Shea.

HENNESSEY, C.J. The plaintiff brought this action seeking a declaration that the fiduciary obligation which shareholders of a close corporation owe one another requires that majority shareholders purchase, or cause the corporation to purchase, the shares of a minority shareholder on the death of the minority shareholder. A Superior Court judge allowed the defendants' motion for summary judgment on this claim and the plaintiff appealed. We granted the plaintiff's application for direct appellate review and now affirm the judgment.

The facts relevant to this appeal are as follows. The plaintiff, Thomas E. Goode, was appointed in April, 1977, as administrator with the will annexed de bonis non of the estate of Alice M. Marr, a deceased stockholder of the Gloucester Ice & Cold Storage Co. (Gloucester). The estate owned 800 shares of the 11,340 shares outstanding of common stock of Gloucester. The defendants are stockholders of Gloucester, and stockholders, officers or directors of defendant North Shore Management & Investment Co., a Massachusetts corporation which is the majority stockholder of Gloucester. The defendants together owned 8,125 shares, or 71.6% of the corporation's stock. Through its operating entity, Cape Pond Ice Co., Gloucester engaged in the manufacture and sale of ice to fishing industry customers. Until 1980, Gloucester carried on a separate fish cold storage business. Because the parties apparently do not dispute that Gloucester is a close corporation, we make that assumption. The corporation appears to have the requisite characteristics of a close corporation. The number of shareholders is small, no ready market exists for the Gloucester stock, and majority shareholder participation in the management of the corporation is substantial.[3] The parties agree that no provisions restricting the transfer of stock or requiring the corporation or remaining shareholders to redeem its stock on the death of a shareholder appear in the corporation's articles of organization or by-laws, or in any agreement among the shareholders.

---

[3] John W. Ryan and John D. Hodges have, since 1978, served as president and treasurer, respectively, of Gloucester. John W. Ryan, John D. Hodges, William A. Eagan, Jr., James A. Ryan, and John D. Hodges, Jr., have been elected to the board of directors of Gloucester annually since February, 1978.

In late 1977 and early 1978, Goode and his counsel informed the management of Gloucester of his desire to sell, or to have redeemed, the 800 shares of Gloucester stock owned by the Marr estate. By a letter dated April 4, 1978, North Shore offered to purchase the 800 shares from the Marr estate at $12.50 a share. The unaudited financial statement of Gloucester for the year ending December 31, 1977, indicated that the book value of the stock was $38.87 a share. The plaintiff did not accept the North Shore offer and, after a short time, the offer was withdrawn.

At the 1980 annual meeting of Gloucester, the stockholders adopted a reorganization plan providing for the merger of Gloucester with Cape Pond Ice Co. (Cape Pond), a Massachusetts corporation in which Gloucester then owned a majority interest. A plan of liquidation and dissolution for Gloucester was adopted at a special shareholders' meeting in September, 1980, but later was abandoned because Gloucester was unable to find a buyer for its assets. Goode attended both of these shareholders' meetings, but did not vote on either proposal. He did not exercise his right to obtain an appraisal of, and payment for, the Marr estate's share in Gloucester pursuant to G. L. c. 156B, §§ 85, 86-98, based on the actions voted at the 1980 annual meeting.

At the Gloucester annual meeting held on August 25, 1982, Goode requested that his stock be redeemed. In response, Goode received a letter dated September 22, 1982, from Gloucester president John W. Ryan, denying any legal obligation on the part of the Gloucester directors to redeem the Marr estate's shares, but agreeing to present to the directors any price and payment terms Goode might accept. Goode replied in a letter dated October 15, 1982, that he did not have sufficient information to formulate a proposal and that the officers and directors of Gloucester were obligated to furnish such information to him.

Following this exchange of correspondence, Goode initiated this action. The complaint alleged essentially the factual circumstances described here and claimed that these circumstances gave rise to a duty on the part of Gloucester, or

its controlling shareholders, or both, to purchase the stock owned by the estate Goode represented. After this action was commenced, Gloucester found a buyer for its assets, which largely consisted of the assets of Cape Pond. At a special shareholders' meeting in June, 1983, the shareholders of Gloucester voted to sell substantially all the assets of Gloucester to that buyer and to liquidate and dissolve the corporation. Goode, again, did not exercise his statutory right to obtain an appraisal of, and payment for, his shares. The sale of Gloucester's assets was consummated on August 23, 1983. On September 23, 1983, Gloucester made a distribution of $136.50 a share to shareholders who surrendered their stock certificates. Goode did not surrender the shares he held for the Marr estate.

On October 13, 1983, the defendants moved for partial summary judgment on the complaint, claiming that neither the controlling shareholders nor the corporation was under a legal obligation to purchase or redeem stock of a minority shareholder. A Superior Court judge allowed this motion, and Goode appealed.[4] While the appeal was pending, in June, 1984, Gloucester made a second liquidating distribution of $17.34 a share, and was dissolved. In October, 1984, Goode surrendered all Gloucester shares he held for the Marr estate and received $153.84 a share, an amount equal to the total of the first and second liquidating distributions paid to other shareholders.

1. *Mootness.* Before reaching the merits of the plaintiff's claim, we address the defendants' contention that the appeal should be dismissed as moot because, since the Superior Court judgment was entered, the plaintiff has received his pro rata share of liquidating distributions made to date in exchange for the surrender of his shares. The defendants argue that the plaintiff has received exactly the relief he sought when he initiated this action — his pro rata share of the assets of Gloucester in return for his stock. Consequently, the defendants argue, no controversy remains between the parties and this court should not consider the case further. See *Lockhart* v. *Attorney*

---

[4] Other parts of the complaint, which asserted a shareholders' derivative claim, were tried before a Superior Court judge, who entered a judgment for the defendants. This judgment was not appealed and is not before us.

*Gen.,* 390 Mass. 780, 783-784 (1984); *Blake* v. *Massachusetts Parole Bd.,* 369 Mass. 701, 703 (1976).

While the defendants describe circumstances which would render a case moot and would ordinarily preclude our consideration of the case on the merits, see *Lockhart* v. *Attorney Gen., supra; Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 298 (1975), these considerations are not present in the instant case because a real controversy still exists. Assuming that the defendants were under a duty to make a reasonable offer to purchase shares on the death of a shareholder, then the plaintiff would have been entitled to have his shares purchased or redeemed within a reasonable time after April, 1977, when he was appointed administrator of the Marr estate, at the value they would have had at that time. This issue did not become moot because the plaintiff's shares were redeemed seven years after the original request was made.

2. *The merits.* In *Donahue* v. *Rodd Electrotype Co.,* 367 Mass. 578, 593 (1975), we established the rule that shareholders in a close corporation owe one another substantially the same fiduciary duty of utmost good faith and loyalty in operation of the enterprise that partners owe one another. Applying that rule, we held in *Donahue* that a controlling shareholder selling a close corporation its own shares must cause the corporation to offer to purchase shares ratably from all other shareholders. *Id.* at 598. Subsequently, we applied the rule to provide relief to a minority shareholder in a close corporation, whose employment and income from the corporation were terminated without cause by the majority shareholders. *Wilkes* v. *Springside Nursing Home, Inc.,* 370 Mass. 842 (1976). See *Hallahan* v. *Haltom Corp.,* 7 Mass. App. Ct. 68 (1979). The plaintiff in the instant case asks us to apply the fiduciary principles established in those cases to hold that, on the death of a minority shareholder, majority shareholders are obligated to purchase, or to cause the corporation to purchase, the shares owned by the minority shareholder. See generally Comment, Close Corporations — Stockholders' Duty of "Utmost Good Faith and Loyalty" Requires Controlling Shareholder Selling a Close Corporation its Own Shares to

Cause the Corporation to Offer to Purchase a Ratable Number of Shares from Minority — *Donahue* v. *Rodd Electrotype Co.*, 89 Harv. L. Rev. 423 (1975).

As we stated in the *Donahue* case, one of the identifying characteristics of a close corporation is the absence of a ready market for corporate stock. *Donahue* v. *Rodd Electrotype Co.*, *supra* at 586, 591. A shareholder wishing to convert an investment in a close corporation to cash for personal financial reasons or because of unhappiness with the management of the enterprise will have only limited opportunities for disposing of the asset. 2 F.H. O'Neal, Close Corporations § 7.23, at 79 (1971). Similarly, the executor or administrator of the estate of a deceased shareholder in a close corporation will be confronted with an illiquid asset that may have a high value in the estate, but have little, if any, dividend value for the beneficiaries. *Id.* In both situations, the only prospective purchasers for the stock may be the remaining shareholders in the corporation or the corporation itself. *Id.* at 78. 1 F.H. O'Neal & R.B. Thompson, O'Neal's Oppression of Minority Shareholders § 2:15, at 38 (2d ed. 1985).

Investors in other types of firms have easier mechanisms available for disposing of their interests. A shareholder in a large, public-issue corporation can sell the stock on the financial markets at no price disadvantage relative to other sellers of that stock. *Id.* at 38. A member of a partnership can convert the investment to cash by exercising the right to dissolve the partnership. *Id.* See *Donahue, supra* at 591. See also G. L. c. 108A, § 31 (1984 ed.).

The shareholder who owns less than a majority interest in a close corporation does not have any of these options.[5] In the absence of an agreement among shareholders or between the corporation and the shareholder, or a provision in the corporation's articles of organization or by-laws, neither the corpora-

_____

[5] A shareholder with a majority interest in a corporation may petition for the dissolution of the corporation for any reason. G. L. c. 156B, § 99 (*a*) (1984 ed.). Forty per cent of a corporation's shareholders may bring a petition for the dissolution of a corporation if directors or shareholders are deadlocked. G. L. c. 156B, § 99 (*b*) (1984 ed.).

tion nor a majority of shareholders is under any obligation to purchase the shares of minority shareholders when minority shareholders wish to dispose of their interest in the corporation. See Hornstein, Stockholders' Agreements in the Closely Held Corporation, 59 Yale L.J. 1040, 1049 (1950). See also *Winchell v. Plywood Corp.*, 324 Mass. 171, 174-175 (1949); *Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corp.*, 282 Mass. 367, 376 (1933).

The minority shareholder in a close corporation is susceptible to oppression by the majority or controlling shareholders. *Wilkes v. Springside Nursing Home, Inc., supra* at 849-850, 852. *Donahue v. Rodd Electrotype Co., supra* at 591. O'Neil & Thompson, *supra* at 38-39. Hornstein, *supra* at 1049. In the instant case, there is no evidence of any oppressive conduct on the part of defendants directed at excluding the shares Goode represented from participation in the affairs of the corporation. In fact, the deceased shareholder, Alice Marr, never held corporate office, or served on the board of directors, or received any salary from Gloucester, and there is no indication that she or her estate was aggrieved by the absence of involvement in corporate management. The majority shareholders made no effort to curtail, or interfere with, any benefits to which Marr or her estate was entitled as a minority shareholder in Gloucester. See *Donahue v. Rodd Electrotype Co., supra* at 581 (employee and corporate officer); *Wilkes, supra* at 852 (director, corporate officer, and employee); *Hallahan v. Haltom Corp., supra* at 70 (principal benefit derived by plaintiff-shareholders was as employees of the corporation). The majority shareholders simply refused to purchase the Marr estate stock. This refusal violated no agreement or corporate governance provision and did not violate any fiduciary obligation they owed to the plaintiff. Nor are any facts present to permit us to conclude that the majority used assets of the corporation to enrich themselves at the expense of minority shareholders.[6] The Marr estate received the same amount for each share upon the liquidation

---

[6] The defendants' argument that the plaintiff is barred from recovery because he waived his appraisal remedy on the two occasions when the shareholders voted to liquidate Gloucester is too broad. If the defendants

of Gloucester as the other shareholders received for their shares.

The plaintiff's argument that imposing a duty on majority shareholders of a close corporation or the corporation to purchase the shares of a deceased shareholder at the request of the executor or administrator of the shareholder's estate would be consistent with the approach adopted in the Statutory Close Corporation Supplement to the Model Business Corporation Act is not correct. The provision requiring a corporation to purchase shares from the estate of a deceased shareholder applies only if the articles of incorporation of the close corporation contain the provision. 3 Model Business Corp. Act Ann., Statutory Close Corp. Supp. § 14 and comments 1-4 (3d ed. 1985). Thus, the close corporation supplement leaves stock buy-out arrangements to the agreement of the parties. See also 37 Bus. Law. 269, 293-299 (1981) and 38 Bus. Law. 1031, 1031-1032 (1983), for provisions and accompanying comments relating to corporate response to the death of a shareholder.

While the plaintiff's predicament in not being able to dispose of the Gloucester stock to facilitate prompt settlement of the Marr estate is unfortunate, the situation was not caused by the defendants but is merely one of the risks of ownership of stock in a close corporation. Cf. *Matter of Dubonnet Scarfs, Inc.,* 105 A.D. 2d 339, 343 (N.Y. 1985). It is not the proper function of this court to reallocate the risks inherent in the ownership of corporate stock in the absence of corporate or majority shareholder misconduct. The Superior Court judge did not err in granting the defendants' motion for partial summary judgment.

*Judgment affirmed.*

were under a duty to purchase the plaintiff's shares or if this court had determined that the plaintiff was the victim of a freeze-out, then the plaintiff's waiver of the appraisal remedy would not be a bar to relief. As our holding makes clear, however, the defendants were not under any duty to purchase or redeem the plaintiff's shares, and the defendants did not engage in freeze-out tactics in an effort to force the plaintiff to sell his shares at a low price.