MARY M. BRODIE, executrix,[1] *vs.* ROBERT J. JORDAN
& another.[2]

Middlesex. November 9, 2006. - December 12, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Corporation,* Close corporation, Stockholder, Valuation of stock. *Damages,*
Breach of fiduciary duty. *Jurisdiction,* Equitable. *Words,* "Freeze out."

In the circumstances of a civil action in which the judge correctly concluded
that the defendants (majority shareholders of a close corporation) breached
their fiduciary duty to the plaintiff (a minority shareholder) by freezing her
out of the corporation, the judge erred in ordering, as a remedy, that the
defendants purchase the plaintiff's shares at a price to be agreed upon by
the parties, where such a remedy placed the plaintiff in a significantly bet-
ter position than she would have enjoyed absent the wrongdoing, as noth-
ing in the law, the governing rules of the corporation, or any other
circumstance gave the plaintiff a reasonable expectation of having her
shares bought out [868-873]; therefore, this court remanded the matter to
the Superior Court for an evidentiary hearing to determine the benefits that
the plaintiff reasonably expected from her ownership of her shares, whether
such expectations had been frustrated, and, if so, the means by which to
vindicate the plaintiff's interests [873-874].

CIVIL ACTION commenced in the Superior Court Department on
February 4, 1998.

The case was heard by *Elizabeth M. Fahey,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Dennis E. McKenna* for the defendants.

*Michael B. Roitman* for the plaintiff.

COWIN, J. In this case we are asked to consider the appropri-
ate remedy for a "freeze-out" of a minority shareholder by the
majority shareholders in a close corporation. The plaintiff, Mary
M. Brodie, is a shareholder in Malden Centerless Grinding Co.,
Inc. (Malden). The defendants, Robert J. Jordan and David J.

---

[1] Of the estate of Walter S. Brodie.

[2] David J. Barbuto.

Barbuto (collectively, defendants), are the corporation's two other shareholders. The plaintiff brought suit, claiming that the defendants had "frozen her out" from participation in the company, refused her access to company information, and denied her any economic benefit from her shares. After a jury-waived trial, a judge in the Superior Court found that the defendants had breached their fiduciary duty to the plaintiff. As a remedy, the judge ordered that the defendants purchase the plaintiff's shares in the corporation at a price equal to her share of the corporation's net assets, as valuated by a court-appointed expert, plus prejudgment interest.

A divided Appeals Court affirmed, with the majority upholding both the finding of a breach of fiduciary duty and the remedy imposed. See *Brodie* v. *Jordan*, 66 Mass. App. Ct. 371, 384-387 (2006). The dissenting judge agreed that a breach of fiduciary duty had been established, but maintained that the forced buyout overcompensated the plaintiff and unfairly punished the defendants. *Id.* at 388 (Kantrowitz, J., dissenting). We granted the defendants' application for further appellate review limited to the propriety of the remedy. We conclude that, at least on this record, it was error to order a buyout.

1. *Background.* Malden is a Massachusetts corporation that operates a small machine shop and produces metal objects such as ball bearings. The plaintiff's now deceased husband, Walter S. Brodie (Walter), was one of the founding members of the company and served as its president from 1979 to 1992. Barbuto has been a shareholder, a director, and the treasurer of the company since its formation. Jordan has been an employee of the company since 1975 and a shareholder, director, and officer since 1984; he is the one responsible for the day-to-day operation of the business. Beginning in 1984, Walter, Barbuto, and Jordan each held one-third of the shares of the corporation and all three served as directors. By 1988, however, Walter was no longer involved in the company's day-to-day operation and only met with Barbuto and Jordan two to three times each year. After Walter and the defendants began to disagree over various management issues, Walter made a number of requests that the company purchase his shares, but those requests were rejected. Neither the articles of organization nor any corporate bylaw

obligated Malden or the defendants to purchase the stock of a shareholder.

The corporation has not paid any dividends to shareholders since 1989. As an employee, Jordan receives a salary at a rate set by the board of directors (Barbuto and himself). Jordan participates in a profit-sharing plan made available by the corporation and has the use of a company vehicle. Barbuto received director's fees from the corporation until 1998. He owns the building that houses Malden's corporate offices and receives rent from the corporation. Barbuto also owns a separate corporation, Barco Engineering, Inc., which is a customer of Malden and for which Malden regularly performs services on an open credit account. Walter received compensation from the company prior to 1992, and was paid a consultant's fee in 1994 and 1995. However, neither Walter nor the plaintiff appears to have received any compensation or other money from the corporation since 1995.

In 1992, Walter was voted out as president and director of Malden, and Jordan was elected president. Walter died in 1997. The plaintiff was appointed Walter's executrix and inherited his one-third interest in Malden. She attended a Malden shareholders' meeting in July, 1997, at which she nominated herself, through counsel, as a director, but Barbuto and Jordan voted against her election. At this same meeting, the plaintiff asked Jordan and Barbuto to perform a valuation of the company so that she could ascertain the value of her shares, but such a valuation was never performed.

In 1998, the plaintiff filed the instant suit. Prior to and since that time, the defendants failed to provide her with various financial and operational company information that she requested. At the time of trial, the defendants had failed to hold an annual shareholder's meeting for the previous five years, and the plaintiff had not participated in any company decision-making.

2. *Discussion.* The parties do not dispute that Malden is a close corporation as defined in *Donahue* v. *Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 586 (1975), in that it has "(1) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority stockholder

participation in the management, direction and operations of the corporation." "[S]tockholders in [a] close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another" (footnotes omitted), *id.* at 593, that is, a duty of "utmost good faith and loyalty," *id.*, quoting *Cardullo* v. *Landau*, 329 Mass. 5, 8 (1952).

Majority shareholders in a close corporation violate this duty when they act to "freeze out" the minority. We have defined freeze-outs by way of example:

> "The squeezers [those who employ the freeze-out techniques] may refuse to declare dividends; they may drain off the corporation's earnings in the form of exorbitant salaries and bonuses to the majority shareholder-officers and perhaps to their relatives, or in the form of high rent by the corporation for property leased from majority shareholders . . . ; they may deprive minority shareholders of corporate offices and of employment by the company; they may cause the corporation to sell its assets at an inadequate price to the majority shareholders . . . ."

*Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, *supra* at 588-589, quoting F.H. O'Neal & J. Derwin, Expulsion or Oppression of Business Associates 42 (1961). What these examples have in common is that, in each, the majority frustrates the minority's reasonable expectations of benefit from their ownership of shares.

We have previously analyzed freeze-outs in terms of shareholders' "reasonable expectations" both explicitly and implicitly. See *Bodio* v. *Ellis*, 401 Mass. 1, 10 (1987) (thwarting minority shareholder's "rightful expectation" as to control of close corporation was breach of fiduciary duty); *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 850 (1976) (denying minority shareholders employment in corporation may "effectively frustrate [their] purposes in entering on the corporate venture"). A number of other jurisdictions, either by judicial decision or by statute, also look to shareholders' "reasonable expectations" in determining whether to grant relief to an aggrieved minority shareholder in a close

corporation.[3] See, e.g., *Brenner* v. *Berkowitz*, 134 N.J. 488, 506-609 (1993); *Matter of Kemp & Beatley, Inc.*, 64 N.Y.2d 63, 72-73 (1984); *Meiselman* v. *Meiselman*, 309 N.C. 279, 289-290, 298-299 (1983); Minn. Stat. § 302A.751, subd. 3a (2004); N.D. Cent. Code § 10-19.1-115(4) (2005). See also 2 F.H. O'Neal & R.B. Thompson, Close Corporations and LLCs, § 9:28 (rev. 3d ed. 2004 & supp. 2006). As discussed *infra*, we believe that this mode of analysis is useful at both the liability and the remedy stages of freeze-out litigation.

In the present case, the Superior Court judge properly analyzed the defendants' liability in terms of the plaintiff's reasonable expectations of benefit. The judge found that the defendants had interfered with the plaintiff's reasonable expectations by excluding her from corporate decision-making, denying her access to company information, and hindering her ability to sell her shares in the open market.[4] In addition, the judge's findings reflect a state of affairs in which the defendants were the only ones receiving any financial benefit from the corporation. The Appeals Court determined that the findings were warranted, and the defendants have not sought further appellate review with respect to liability. Thus, the only question before us is whether, on this record, the plaintiff was entitled to the remedy of a forced buyout of her shares by the majority. We conclude that she was not so entitled.

a. *Remedies for freeze-out of minority shareholder.* The proper remedy for a freeze-out is "to restore [the minority shareholder] as nearly as possible to the position [s]he would have been in had there been no wrongdoing." *Zimmerman* v. *Bogoff*, 402 Mass. 650, 661 (1988). Because the wrongdoing in a freeze-out is the denial by the majority of the minority's reasonable expectations of benefit, it follows that the remedy should, to the

---

[3]Although these jurisdictions, unlike Massachusetts, afford minority shareholders a statutory cause of action for majority "oppression," "[t]he standards used to determine a breach of fiduciary duty are often the same as used to define oppression." 2 F.H. O'Neal & R.B. Thompson, Close Corporations and LLCs, § 9:18, at 9-98 (rev. 3d ed. 2004).

[4]As the Superior Court judge acknowledged, the defendants gave the plaintiff full permission to sell her stock to a third party. The judge concluded, however, that by refusing to perform a valuation of the company, the defendants prevented the plaintiff from determining the value of her shares.

extent possible, restore to the minority shareholder those benefits which she reasonably expected, but has not received because of the fiduciary breach.

If, for example, a minority shareholder had a reasonable expectation of employment by the corporation and was terminated wrongfully, the remedy may be reinstatement, back pay, or both. See *Wilkes* v. *Springside Nursing Home, Inc., supra* at 854 (awarding minority shareholder damages for lost employment). Similarly, if a minority shareholder has a reasonable expectation of sharing in company profits and has been denied this opportunity, she may be "entitled to participate in the favorable results of operations to the extent that those results have been wrongly appropriated by the majority." *Crowley* v. *Communications for Hosps., Inc.*, 30 Mass. App. Ct. 751, 768 (1991) (ordering, in derivative action brought by frozen-out minority, that majority return wrongly appropriated funds to corporation and distribute them as dividend to shareholders). The remedy should neither grant the minority a windfall nor excessively penalize the majority. Rather, it should attempt to reset the proper balance between the majority's "concede[d] . . . rights to what has been termed 'selfish ownership,' " *Wilkes* v. *Springside Nursing Home, Inc., supra* at 850-851, and the minority's reasonable expectations of benefit from its shares.

b. *The Superior Court judge's remedy.* Courts have broad equitable powers to fashion remedies for breaches of fiduciary duty in a close corporation, *Zimmerman* v. *Bogoff, supra* at 661, and their choice of a particular remedy is reviewed for abuse of discretion, *Demoulas* v. *Demoulas*, 428 Mass. 555, 589 (1998). Here, the Superior Court judge ordered the defendants to buy out the plaintiff at the price of an expert's estimate of her share of the corporation, a remedy that no Massachusetts appellate court has previously authorized.[5] The problem with this remedy

[5]The remedy in *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 603 (1975), is readily distinguishable. There, the majority had caused the corporation to purchase majority shareholders' stock at a favorable price while denying minority shareholders the same opportunity. *Id.* at 583-584. We held that, to comply with its fiduciary duties, the majority had to either rescind the sale of its own shares to the corporation or cause the corporation to purchase the minority's shares on the same terms. *Id.* at 603. Here,

is that it placed the plaintiff in a significantly *better* position than she would have enjoyed absent the wrongdoing, and well exceeded her reasonable expectations of benefit from her shares.

One of the defining aspects of a close corporation is "the absence of a ready market for corporate stock." *Goode* v. *Ryan*, 397 Mass. 85, 90 (1986). It is well established that

> "[i]n the absence of an agreement among shareholders or between the corporation and the shareholder, or a provision in the corporation's articles of organization or by-laws, neither the corporation nor a majority of shareholders is under any obligation to purchase the shares of minority shareholders when minority shareholders wish to dispose of their interest in the corporation."

*Id.* at 90-91. In this case, it is undisputed that neither the articles of organization nor any corporate bylaw obligates Malden or the defendants to purchase the plaintiff's shares. Thus, there is nothing in the background law, the governing rules of this particular close corporation, or any other circumstance that could have given the plaintiff a reasonable expectation of having her shares bought out.

In ordering the defendants to purchase the plaintiff's stock at the price of her share of the company, the judge created an artificial market for the plaintiff's minority share of a close corporation — an asset that, by definition, has little or no market value. See *Goode* v. *Ryan*, *supra* at 90; *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 586 (1975) (close corporation has "no ready market for the corporate stock"). Thus, the remedy had the perverse effect of placing the plaintiff in a position superior to that which she would have enjoyed had there been no wrongdoing.

The remedy of a forced buyout may be an appealing one for a court of equity in that it results in a "clean break" between acrimonious parties. Yet this rationale would require a forced share purchase in virtually every freeze-out case, given that resort to litigation is itself an indication of the inability of

there is no allegation that Malden purchased the defendants' shares without giving the plaintiff a similar opportunity.

shareholders to work together.[6] In any event, no matter how expedient a forced buyout may be as a solution, the remedy for a breach of fiduciary duty must be proportional to the breach. Other remedies are available to compensate and protect minority shareholders without radically transforming the nature of their asset or arbitrarily increasing its value.[7]

c. *Considerations on remand.* As we have indicated, the remedy for the defendants' breach of fiduciary duty is one that protects the plaintiff's reasonable expectations of benefit from the corporation and that compensates her for their denial in the past. An evidentiary hearing is appropriate to determine her reasonable expectations of ownership; whether such expectations have been frustrated; and, if so, the means by which to vindicate the plaintiff's interests. For breaches visited upon the plaintiff resulting in deprivations that can be quantified, money damages will be the appropriate remedy.[8] Prospective injunctive relief may be granted to ensure that the plaintiff is allowed to participate in company governance, and to enjoy financial or

[6]In past decisions of this court and the Appeals Court, antagonistic shareholders in a close corporation often have been required to continue their business relationship. See *Bodio* v. *Ellis*, 401 Mass. 1, 9-10 (1987); *Crowley* v. *Communications for Hosps., Inc.*, 30 Mass. App. Ct. 751, 766-768 (1991); *Hallahan* v. *Haltom Corp.*, 7 Mass. App. Ct. 68, 71 (1979).

[7]We have considered the cases from other jurisdictions cited by the plaintiff in which buyout was considered an appropriate remedy for majority shareholder misconduct. In most of these States, statutes authorize the more drastic remedy of involuntary dissolution, and thus courts have understandably inferred the power to order the lesser remedy of a buyout. See, e.g., *Sauer* v. *Moffitt*, 363 N.W.2d 269, 275 (Iowa Ct. App. 1984); *21 West, Inc.* v. *Meadowgreen Trails, Inc.*, 913 S.W.2d 858, 867 (Mo. Ct. App. 1995); *Maddox* v. *Norman*, 206 Mont. 1, 9-10 (1983). In Massachusetts, by contrast, minority shareholders have no statutory right to involuntary dissolution of a corporation due to majority misconduct. See G. L. c. 156B, § 99 (holders of forty per cent of outstanding shares may petition for dissolution, but only in event of deadlock). To the extent that any cases have held that, even in the absence of statutory authorization, forced buyout is a remedy generally available to an aggrieved minority shareholder in a close corporation, see, e.g., *G & N Aircraft, Inc.* v. *Boehm*, 743 N.E.2d 227, 243-244 (Ind. 2001), we decline to follow them.

[8]It is not clear what pecuniary damages, if any, the plaintiff may have incurred as a result of the defendants' conduct. To the extent that the plaintiff has suffered compensable harm, the judge on remand should make findings and enter a money judgment accordingly.

other benefits from the business, to the extent that her owner-ship interest justifies.

In devising a remedy that grants the plaintiff her reasonable expectations of benefit from stock ownership in Malden, the judge may consider the fact that the plaintiff has received no economic benefit from her shares. If the defendants have denied the plaintiff any return on her investment while "drain[ing] off the corporation's earnings" for themselves, *Donahue. v. Rodd Electrotype Co. of New England, Inc., supra* at 588-589, the judge may consider, among other possibilities, the propriety of compelling the declaration of dividends. See *Crowley* v. *Communications for Hosps., Inc.,* 30 Mass. App. Ct. 751, 767-768 (1991).[9]

3. *Conclusion.* That part of the judgment of the Superior Court awarding the plaintiff $94,500 plus prejudgment interest is reversed; in all other respects the judgment is affirmed. The case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*

---

[9]Our disposition of the case makes it unnecessary to address at this time the defendants' contention that it was error to award the plaintiff prejudgment interest.