ONE TO ONE INTERACTIVE, LLC *vs.* DAVID K. LANDRITH;
STEPHEN HUMPHREY & others,[1] third-party defendants.

No. 09-P-178.

Suffolk. November 9, 2009. - January 21, 2010.

Present: KAFKER, WOLOHOJIAN, & MILKEY, JJ.

*Contract,* Performance and breach, Interference with contractual relations.
   *Corporation,* Close corporation. *Fiduciary. Damages,* Breach of fiduciary
   duty, Unlawful interference. *Practice, Civil,* Instructions to jury. *Bankruptcy,*
   Discharge.

In a civil action involving the claims of one founder and shareholder of a
   closely-held corporation against several other founders and shareholders, a
   Superior Court judge did not err in instructing a jury to consider the one
   founder's claim for breach of fiduciary duty, where, despite the existence
   of a contract between that founder and the corporation for the redemption
   of his shares, the other founders agreed to a jury instruction that all the
   founders owed each other fiduciary duties and, having first contended that
   the contract was not binding, sought enforcement of the contract as a bar
   to the breach of fiduciary duty claim only after it was determined by a
   judge to be binding. [145-146]
In a civil action involving the claims of one founder and shareholder of a
   closely-held corporation against several other founders and shareholders, suf-
   ficient evidence existed to support the jury's finding that the other founders
   committed a breach of their fiduciary duties, where the one founder submit-
   ted proof at trial as to various improper actions by the other founders,
   including extensive maneuvering by them to renege on their deal with the
   one founder, as well as their use of improper tactics to pressure the one
   founder to accept less than he was entitled to under a contract for the redemp-
   tion of his shares, and where testimony by the former chief executive officer
   of the corporation that the founders operated "by consensus" permitted an
   inference that the other founders were involved in the improper actions.
   [146-148]
In a civil action involving the claims of one founder and shareholder of a
   closely-held corporation against several other founders and shareholders, a
   Superior Court judge properly instructed the jury on the legal effect of the
   corporation's bankruptcy filing and eventual discharge of its obligation to
   redeem the one founder's shares [148-150]; however, remand was required
   on the issue of damages, where the judge erroneously instructed the jury
   that damages were to be calculated at the time of the breach of fiduciary

---

[1]Michael Donnelly, Ian Karnell, Jeremi Karnell, Robert Stoloff, One to One
Interactive, LLC, and McGladrey & Pullen, LLP.

duty, and made erroneous evidentiary rulings that limited the jury's consideration of later economic developments that were relevant to the corporation's financial condition [150-153].


CIVIL ACTION commenced in the Superior Court Department on September 18, 2002.

A motion for summary judgment was heard by *Allan van Gestel*, J., and the case was tried before him.

*Elizabeth A. Houlding* (*Allen N. David* with her) for Ian Karnell & another.

*Jeffrey J. Upton* (*Daniel J. Dwyer* with him) for David K. Landrith.

KAFKER, J. Former founders of an Internet start-up company, One to One Interactive, LLC (OTO or company), sued each other for claims arising out of internal disputes and the eventual demise of their closely-held corporation.[2] At issue in this appeal are claims by the plaintiff, David K. Landrith, that the other founders caused OTO to renege on his stock redemption agreement.[3] The jury awarded him $4.95 million for breach of fiduciary duty and intentional interference with a contract. We remand the case for a new trial on damages only.

1. *Background.* Landrith, Ian Karnell, and Jeremi Karnell were college friends. Together with Michael Donnelly, they founded OTO, a digital marketing business, in 1997. In 2000, State Street Bank (SSB), through a subsidiary, invested $1 million in OTO. In exchange, SSB received a six percent interest in the company. In connection with this investment, OTO decided to amend and restate its operating agreement in order to, among other things, create two different classes of stock, A and B, and to provide for stock redemption. Each of OTO's members, including Landrith, would be required to execute the new agreement.

At the same time, problems had developed between Landrith

[2]This appeal involves the third-party claim only. When necessary, we refer to the parties as plaintiff and defendants, without the third-party designation.

[3]OTO has been discharged; it is not a party to this appeal. Michael Donnelly and McGladrey & Pullen, LLP, settled separately; they are not parties here. The appeals by defendants Stephen Humphrey and Robert Stoloff were dismissed. Thus, the only parties here are the plaintiff Landrith and the defendants Ian and Jeremi Karnell.

and the other founding members, with the other members desiring Landrith's departure. Landrith threatened that he would not execute the amended operating agreement unless OTO agreed to negotiate his buyout. Landrith negotiated the terms of his separation, which were eventually memorialized in a proposed term sheet (sometimes hereinafter referred to as contract), which was signed by Landrith and Donnelly, OTO's in-house counsel, on behalf of OTO. The proposed term sheet provided that Landrith's shares were valued at about $3.5 million. This figure was based on the price SSB paid for its six percent stake rather than on an appraisal, as would have been the case if the valuation were made under the terms of the amended operating agreement. Landrith's shares were to be repurchased by OTO for, essentially, interest-only payments at the prime interest rate for five years, with a final "balloon" payment of $3.5 million due in November, 2005.

Relying on the proposed term sheet, Landrith resigned from OTO and executed the amended operating agreement. Consistent with the proposed term sheet, OTO began to make the monthly interest payments and continued to do so for the next fourteen months. But in March, 2001, Stephen Humphrey, then CEO of OTO, on behalf of OTO and apparently acting on Donnelly's advice, wrote to Landrith that Landrith's shares, as stated in the proposed term sheet, were grossly overvalued and that the proposed term sheet did not constitute a binding agreement. He informed Landrith that OTO would retain an appraiser to revalue his interest as provided for in the amended operating agreement and that the redemption of Landrith's shares would be made pursuant to the amended operating agreement. Landrith threatened litigation.

OTO retained an appraiser, who valued Landrith's shares at about $650,000. This amount was offered to Landrith in return for his shares. When Landrith refused the offer, OTO stopped making any payments to him. OTO also sent Landrith an Internal Revenue Service schedule K-1 allocating $179,544 in taxable income to him without paying him the distribution to pay the tax obligation as required by the company's amended operating agreement.[4] OTO also brought a declaratory relief action in

---

[4]Landrith submitted evidence that the schedule K-1 allocated to Landrith one-third of OTO's taxable income even though he owned only eighteen

September, 2002, alleging that Landrith was obligated to tender his class A shares at the $650,000 value appraised under the amended operating agreement.

Landrith responded with a counterclaim against OTO and third-party claims against the remaining OTO shareholders, including the Karnells, alleging breach of the covenant of good faith and fair dealing, intentional interference with contractual relations, breach of fiduciary duty, breach of contract, tortious conspiracy, conspiracy involving coercion, fraud, violation of G. L. c. 93A, and estoppel. Landrith also sought a declaratory judgment that the proposed term sheet is valid and enforceable. In 2004, the judge, on Landrith's summary judgment motion, ruled that the proposed term sheet constituted a binding contract. In response, OTO filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in March, 2005. Landrith filed a claim in that proceeding and collected $40,000 in satisfaction of his claims against the company. OTO's debt to Landrith was discharged.

The matter proceeded to trial. The trial took seven days, with the jury awarding Landrith, on special questions, $4.95 million plus costs and interest on his interference with contractual relations and breach of fiduciary duty claims. The jury were instructed, without objection, that "[t]he damages recoverable for either of these breaches is the same." The damages instructions for both counts were virtually identical. The remaining claims were dismissed, and are not at issue here.[5] The judge denied the defendants' postjudgment motions.

2. *Discussion.* At issue here are Landrith's claims for interference with contract and breach of fiduciary duty. The jury found for Landrith on both the interference with contract and breach of fiduciary duty claims on the same evidence, awarding identical damages on each claim. As explained above, they were also instructed, without objection, that the damages recoverable under either theory were the same in this case.

---

percent of the company. Landrith argued that the purpose of the schedule K-1 was to assign him tax liability that he could not pay in order to pressure him into accepting the $650,000 figure for his shares, at which point OTO would make the necessary distribution.

[5]The judge dismissed the G. L. c. 93A claim on the ground that the dispute was merely an intracorporate dispute. That ruling is not at issue here.

With respect to the claims of breach of fiduciary duty, the Karnells contend on appeal that because there was a controlling contract on point, i.e., the proposed term sheet, the breach of fiduciary duty analysis does not apply. See *Chokel* v. *Genzyme Corp.*, 449 Mass. 272, 278 (2007). There are multiple problems with this argument. First and foremost, the parties agreed and the judge instructed that all the founders owed each other fiduciary duties. In addition, the Karnells presented evidence at trial and argued in closing that Landrith, as a continuing member of OTO, owed and breached fiduciary duties toward OTO and the other OTO members. Moreover, the Karnells suggested the fiduciary duty jury instruction that the judge gave. In these circumstances, the Karnells cannot argue now that they did not have a fiduciary duty toward Landrith. See *Box Pond Assn.* v. *Energy Facilities Siting Bd.*, 435 Mass. 408, 422 n.14 (2001).

This is also not a case where the founders were sued for simply seeking to enforce actions expressly authorized by the relevant corporate documents. Compare *Chokel* v. *Genzyme Corp., supra.*[6] Rather just the opposite was true. The Karnells contended for years that the proposed term sheet was nonbinding and sought to disavow it. It was only after the contract was determined by the judge to be binding, and the company's debt under the contract was discharged in bankruptcy, that the Karnells sought its enforcement, or at least sought its enforcement as a bar to a breach of fiduciary duty claim. In these circumstances, a founder's fiduciary duties are not eclipsed by the terms of the contract.[7]

The Karnells also argue that there was not sufficient evidence for the jury to find that the Karnells breached their fiduciary duties.[8] We disagree. An appellate court reviewing the denial of

[6]Nor is this a case, like *Chokel* v. *Genzyme Corp., supra,* involving a public corporation. See *Pointer* v. *Castellani,* 455 Mass. 537, 554 (2009).

[7]The Karnells have also argued on appeal that once Landrith signed the proposed term sheet, neither OTO nor the shareholders owed Landrith a fiduciary duty because he was no longer a shareholder. The basic problem with this contention is that OTO did not redeem Landrith's shares. For example, for the tax year 2001, OTO sent Landrith a schedule K-1 income statement declaring that Landrith was a "limited liability company member." Moreover, although it changed its position years later after it lost the declaratory judgment action, Donnelly testified that OTO originally took the view that OTO had not redeemed Landrith's shares, and therefore Landrith was still a member.

[8]No argument has been made here to the effect that the fiduciary duty claim should not have been sent to the jury. Compare *Merola* v. *Exergen Corp.*, 423

a motion for judgment notwithstanding the verdict must determine whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the" nonmoving party. *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978), quoting from *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). *O'Brien* v. *Pearson*, 449 Mass. 377, 383 (2007). Landrith submitted proof at trial as to various improper actions by the founders, including extensive maneuvering by them to renege on their deal with Landrith, and their use of improper tactics to pressure him to accept less than he was entitled to under the contract. Those tactics included the schedule K-1, which subjected Landrith to an unexpected tax obligation while OTO withheld the distribution necessary to pay the tax unless he accepted only $650,000 for his shares. There was also testimony from Humphrey, OTO's former CEO, that the company's founders operated "by consensus," from which the jury could reasonably infer that the Karnells were involved in the maneuvering, pressure tactics, and unilateral decision-making that left Landrith with neither an ongoing role in the company that he founded nor reasonable compensation for his shares in the company.[9] As majority shareholders in a close corporation violate their fiduciary duty when they "frustrate[] the minority's reasonable expectations of benefit from their ownership of shares," we conclude that there was sufficient evidence for the jury to find a breach of fiduciary duty on the part of the Karnells. *Brodie* v. *Jordan*, 447 Mass. 866, 869 (2006). See *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 592 (1975) (discussing "schemes . . . designed to compel the minority to relinquish stock at inadequate prices");

Mass. 461, 464 (1996) ("claim based on this [fiduciary] duty [of majority shareholder in close corporation] . . . is a matter of law for the court, as is the remedy for such breach"), and *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 527 & n.32 (1997), with *O'Brien* v. *Pearson*, 449 Mass. 377, 383-384 (2007) (discussing jury verdict for breach of fiduciary duty). A judge has discretion under Mass.R.Civ.P. 39, as amended, 423 Mass. 1406 (1996), to send equity claims to a jury. See *Hatton* v. *Meade*, 23 Mass. App. Ct. 356, 360-361 (1987); Smith & Zobel, Rules Practice § 39.5 (2d ed. 2007).

[9]Landrith submitted sufficient evidence to establish that there were "less harmful alternatives" to the improper tactics, extensive maneuvering, unilateral decision-making, and ultimate freeze-out of him without reasonable compensation. *Pointer* v. *Castellani*, 455 Mass. 537, 551 (2009). At a minimum, a more straightforward approach to renegotiating the contract was available.

*Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 849 (1976) (considering "the opportunity afforded to majority stockholders to oppress, disadvantage or 'freeze out' minority stockholders"); *Merola* v. *Exergen Corp.*, 423 Mass. 461, 464 (1996) (describing circumstances where the termination of a minority shareholder's employment may present a breach of fiduciary duty); *Pointer* v. *Castellani*, 455 Mass. 537, 550-552 (2009). Thus, the Karnells' arguments regarding the sufficiency of the evidence fail.

Our conclusion that no error produced the jury's finding of liability on the claim for breach of fiduciary duty means that it is unnecessary for us to examine the issues raised by the Karnells regarding the finding of liability on the contractual interference claim.[10] No party has argued that the measure of damages for the two claims is different, and a proper damage award on the fiduciary duty claim would remain in place even if the Karnells were not liable for contractual interference. We turn, therefore, to the judge's instructions on damages.

Both parties agree that the judge correctly instructed the jury that damages recoverable for breach of fiduciary duty are "the loss of those advantages but for the defendants' breach or interference that Landrith would have been able to attain or enjoy." See *Brodie* v. *Jordan*, 447 Mass. at 871 (injured party entitled to "those benefits which she reasonably expected, but has not received because of the fiduciary breach").[11] At issue, however, are additional instructions the judge gave concerning the effect of "economic developments or events occurring after the wrongful conduct," including the bankruptcy filing and the discharge.

[10]The defendants claimed that the judge erred when he declined to instruct the jury that Landrith could prevail on the interference with contract claim only if he proved that the defendants acted with "actual malice." See *Blackstone* v. *Cashman*, 448 Mass. 255, 270 (2007) ("when the defendant is a corporate official, the improper motive or means element should be formulated as whether the controlling factor in the defendant's interference was actual malice — that is, a spiteful, malignant purpose unrelated to a legitimate corporate interest").

[11]Likewise, "[t]he damage recoverable for inducing a breach of contract is 'the loss of advantages . . . which, but for such interference, the plaintiff would have been able to attain or enjoy.' " *H.D. Watts Co.* v. *American Bond & Mort. Co.*, 267 Mass. 541, 551 (1929), quoting from *Walker* v. *Cronin*, 107 Mass. 555, 565 (1871).

Landrith contends that economic developments that occurred after OTO breached its fiduciary duty are irrelevant. Thus, he argues, once the founders breached their fiduciary duty by directing the company to renege on the contract in 2001, the breach and the amount of damages were established. The Karnells respond that economic conditions after 2001 were relevant because the balloon payment was not due until November 28, 2005, and Landrith understood he would not get that payment if the company went out of business before then. The Karnells contend that the bankruptcy filing on March 18, 2005, and the eventual discharge of OTO's contractual obligation, extinguished the founders' remaining obligations related to the contract, including the balloon payment.

We begin with the judge's instructions on the legal effect of a filing and discharge in bankruptcy. The judge told the jury "to take into account . . . the fact that [the company] filed for bankruptcy in March of 2005. As a result of that bankruptcy, Mr. Landrith was awarded $40,000 in satisfaction of his claim against [the company]. But, that is not in satisfaction of his claims against the defendants here. That's a totally different situation." The judge further instructed that "this recovery [in bankruptcy] does not have the effect of eliminating Mr. Landrith's claims in this particular case."

We conclude that this part of the instruction properly reflected the limited effect of recovery and discharge in bankruptcy. According to 11 U.S.C. § 524(e) (1978), "Except as provided in subsection (a)(3) of this section,[12] discharge of a debt of the debtor does not affect the liability of any other entity . . . for[] such debt." A discharge in bankruptcy pursuant to § 524 of the Bankruptcy Code "is neither a payment nor an extinguishment of a debt; the discharge simply bars future legal proceedings to enforce the discharged debt against the debtor." *Ramsay* v. *Camrac, Inc.,* 96 Conn. App. 190, 201 (2006). In other words, the "debt remains in existence after a discharge in bankruptcy"; it just cannot be enforced against the debtor. *Ibid.* Thus, for example, a guarantor is still responsible for the debt of the discharged debtor. The discharged debtor in the instant case is

---

[12]None of the exceptions set out in subsection (a)(3) are applicable in the instant case.

OTO, not the Karnells. The Karnells were not, however, guarantors of the debt.

The broad language of § 524(e) also incorporates the concept, drawn from the Bankruptcy Act of 1898, "that a corporation's discharge in bankruptcy 'shall not release its officers, the members of its board of directors or trustees or of other similar controlling bodies, or its stockholders or members, as such, from any liability under the laws of a State or of the United States.' Act of June 22, 1938, ch. 575, § 4(b), 52 Stat. 845 (formerly codified at 11 U.S.C. § 22[b] [1976])." *Underhill* v. *Royal*, 769 F.2d 1426, 1432 (9th Cir. 1985). See *In re Inforex, Inc.*, 26 B.R. 515, 518 (Bankr. D. Mass. 1983) ("Plaintiffs' disingenuous argument that the absence of a provision containing similar language in the Bankruptcy Code evidences Congress' intention to protect a debtor's officers and directors from tort liability ignores the broad language of § 524[e]").

Consequently, as the judge instructed, the discharge of OTO's debt in bankruptcy does not as matter of law extinguish Landrith's claim against the Karnells for breach of fiduciary duty regarding his "reasonable expectations of benefit from [his] ownership of [his] shares." *Brodie* v. *Jordan*, 447 Mass. at 869. In addition, the recovery of $40,000 from OTO in satisfaction of Landrith's claim against OTO is not, as the judge properly explained, "in satisfaction of his claims against the defendants" for breach of fiduciary duty. Moreover, it was proper to instruct the jury to take the $40,000 recovery into account because the amount Landrith had received for his shares in Bankruptcy Court was relevant to what additional monies, if any, he was entitled to receive for his breach of fiduciary duty claim related to those shares. Otherwise, there could be a duplicative recovery.

We do, however, have problems with the remainder of the damages instruction. The judge instructed the jury

> "to assess the actual damage to Mr. Landrith's economic interests at the time of the commission of the breach. This means, for example, in assessing damages for any breach of fiduciary duty, you are to look to the damage to Mr. Landrith's economic welfare at the time of the breach. In determining damages for intentional interference with the

contract, you're to look at damages to Mr. Landrith's interests at the time of that interference.

"Later economic developments or events occurring after the wrongful conduct do not provide a shield for the defendants to prevent full recovery by Mr. Landrith. Such damages may be stated plainly as the full pecuniary loss of the benefits he was to receive under the contract."[13]

The Karnells claim that this language instructed the jury not to consider OTO's financial problems or bankruptcy in calculating what Landrith was owed for breach of fiduciary duty. Rather, they claim, the judge instructed the jury to award the full principal and interest amount if a breach was established.[14] After the instructions were given, they objected, stating that Landrith's asset or entitlement "was a note, not a check he was going to pick up tomorrow [and] . . . [t]he bankruptcy is sort of a subsequent superseding intervening cause." The Karnells further noted that the balloon payment was due postbankruptcy. "And whatever it was he had [as] a consequence of subsequent events was not the $3.5 million."

The problem was exacerbated, the Karnells claim, by a series of evidentiary rulings by the judge that originally precluded them "from presenting testimony or other evidence respecting [OTO]'s bankruptcy status and financial condition subsequent to the date that the [founders] caused OTO to renounce the contract."[15] It was only after Landrith himself testified to the limited recovery in bankruptcy that the judge allowed evidence on OTO's financial condition to be submitted.

We conclude that the instructions requiring damages to be calculated at the time of the breach and the instructions and evidentiary rulings limiting the consideration of later economic developments require a remand on damages in the instant case. Here the balloon payment was not due until four years after the

---

[13]We note that the same problematic damages instruction was given for both the breach of fiduciary duty and intentional interference with contract counts.

[14]The Karnells argue that $4.95 million is the full principal and interest amount.

[15]Landrith vigorously argued this position to the judge.

beginning of the course of conduct that constituted the breach of fiduciary duty. Economic developments up until the time that the balloon payment was due are relevant considerations. They are relevant to the consideration of what Landrith would have been able to recover "but for" the breach of fiduciary duty. See *Brodie* v. *Jordan*, 447 Mass. at 870-871.

The Karnells were entitled to present evidence, and the jury were entitled to consider the economic condition of the company between the time the company stopped paying on the contract and the date the balloon payment was due. The Karnells were also entitled to try to prove and the jury were entitled to decide whether the company would not have been able to pay some or all of the remainder of the contract due to economic difficulties, regardless of whether the founders fulfilled their fiduciary duties. Cf. *H.D. Watts Co.* v. *American Bond & Mort. Co.*, 267 Mass. 541, 551-555 (1929) (in determining damages in tortious interference with contract case brought by construction company against bonding company, it was a jury question whether hotel that was the subject of the contract would have actually been built); *Harley-Davidson Motor Co.* v. *Bank of New England-Old Colony, N.A.*, 897 F.2d 611, 615-616 (1st Cir. 1990) (appellate court upheld trial court finding that financial problems and bankruptcy were inevitable and therefore improper interference with contract did not cause bankruptcy or plaintiff's losses); *Mueller* v. *Abdnor*, 972 F.2d 931, 938-939 (8th Cir. 1992) (trial court cannot presume purchaser's ability to perform; plaintiff might otherwise "obtain[] a windfall from a contract that might never have been performed even if the defendant had done nothing wrong"). Compare *Sorbus, Inc.* v. *UHW Corp.*, 855 S.W.2d 771, 775 (Tex. Ct. App. 1993) (court reversed jury verdict for tortious interference where trial court refused the offer of evidence that, at the time the contract was to be performed and monthly payments to be made, payor of contract had gone into bankruptcy; inability to perform due to insolvency "can be an affirmative defense which could, based upon jury findings, prevent recovery upon all or part of the claim for damages"). OTO's economic condition prior to the balloon payment due date might, for example, have rendered a bankruptcy filing and a discontinuance of payments inevitable even if, in the exercise of their fiduciary duties, the founders had explored

all reasonable practicable alternatives. See *O'Brien* v. *Pearson,* 449 Mass. 377, 385 (2007). See also *Wilkes* v. *Springside Nursing Home, Inc.,* 370 Mass. 842, 851-852 (1976); *Zimmerman* v. *Bogoff,* 402 Mass. 650, 657 (1988); *Pointer* v. *Castellani,* 455 Mass. at 550-552.[16] In sum, given that the balloon payment was not due for five years after the contract was signed, it was error to instruct the jury that damages were to be determined at the time of the breach and that the company's later economic condition should not be considered.

3. *Conclusion.* We remand the case to the Superior Court on the issue of damages on the breach of fiduciary duty count. The judgment on liability on the breach of fiduciary duty count is affirmed.[17]

*So ordered.*

---

[16]This is different from the Karnells' argument that the bankruptcy filing and discharge here compelled the conclusion that Landrith's payments would not have been made, and the jury should have been so instructed.

[17]We need not address the contractual interference count for the reasons stated *supra* at 148.