344 So.2d 574 (1977)
Willard D. ALBRITTON, etc., Appellant,
v.
GENERAL PORTLAND CEMENT CO., etc., Appellee.
No. 49938.
Supreme Court of Florida.
March 31, 1977.
*575 Lee S. Damsker, Gordon & Maney, Tampa, for appellant.
Charles H. Ross, Tampa, for appellee.
ENGLAND, Justice.
By direct appeal pursuant to Article V, Section 3(b)(1) of the Florida Constitution, we have before us an order of the Hillsborough County Court holding Section 55.145, Florida Statutes (1975), unconstitutional. In relevant part that statute provides:
"55.145 Discharge of judgments in bankruptcy.
At any time after (1) year has elapsed since a bankrupt ... was discharged from his debts, pursuant to the act of congress relating to bankruptcy, the bankrupt ... may petition the court in which the judgment was rendered ... for an order to cancel and discharge such judgment... ." If it appears upon the hearing that the bankrupt ... has been discharged from the payment of that judgment or of the debt upon which it was recovered, the court shall enter an order canceling and discharging said judgment. The order of cancellation and discharge shall have the same effect as a satisfaction of judgment... ."
*576 On May 22, 1967, General Portland Cement Company (Portland) obtained in Hillsborough County a judgment against Willard Albritton in the amount of $602.17. Two days later a certified copy of the judgment was filed with the Clerk of the Circuit Court of Lee County. By operation of Section 55.10, Florida Statutes (1965), the judgment then constituted a lien on real property owned by Albritton in Lee County[1] except, of course, to the extent of the homestead exemption mandated by Article X of the 1885 Florida Constitution then in effect. On March 13, 1968, Albritton filed for bankruptcy, listing the judgment debt to Portland among the claims of unsecured creditors. He received his discharge in bankruptcy on August 16, 1968.
Section 55.145 was enacted by the Florida Legislature in 1970.[2] On March 29, 1975, Albritton petitioned the county court under the statute in order to discharge Portland's judgment. The court denied Albritton's petition and declared Section 55.145 unconstitutional. The court held that the statute would deprive Portland of due process of law in that it purported to affect pre-existing liens, impaired the obligation of Portland's contract, and constituted an ex post facto law. We disagree on all counts and reverse.
Section 55.145 was enacted to alleviate unfair burdens previously placed on bankrupts by the laws of this state. A discharge in bankruptcy releases the bankrupt from personal liability for a judgment,[3] but it does not affect a lien which arose from the judgment prior to bankruptcy and which attached to property remaining in the hands of the bankrupt as exempt from the bankruptcy act.[4] Liens so unaffected remain enforceable to the extent that the laws of the state wherein they arose permit,[5] but the judgment debt voided in bankruptcy cannot constitute a lien on after-acquired property.[6]
The judgment which Portland has recorded in the official court records of Lee County is enforceable only against the narrow range of pre-bankruptcy property which Albritton may have possessed before his bankruptcy and which was treated as exempt in the bankruptcy proceeding.[7] The recordation of Portland's judgment, however, places a continuing cloud on Albritton's title to Lee County real property, even though the judgment does not constitute an enforceable encumbrance against discharged property or property acquired after March 13, 1968. The courts of states having like statutes have held that the discharge of a judgment will not affect a judgment lien which survives the bankruptcy.[8] Section 55.145, like its counterparts in other states, was designed to allow discharged bankrupts to "clear up the record by making it show upon its face that the judgment no longer attaches as a lien on real estate subsequently acquired and constitutes no personal liability against the debtor... ."[9]
Nothing in Section 55.145 authorizes the invalidation of liens which survive bankruptcy, to the extent there existed property subject to lien when the petition was filed. Consequently, no constitutional *577 issues relative to its operation are presented.
The judgment of the county court is reversed, and this case is remanded with instructions to proceed on Albritton's petition. If it appears that there is no real property to which a lien could have attached prior to bankruptcy, Albritton is entitled to the benefit of the statute and a record cancellation of Portland's judgment. If property is present in Lee County to which Portland's lien attached prior to bankruptcy and as to which title was not cleared to Albritton in that proceeding, the cancellation should be limited accordingly.[10]
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, SUNDBERG, HATCHETT and KARL, JJ., concur.
NOTES
[1] The record before us is unclear as to whether the judgment also was filed in any other counties.
[2] Ch. 70-12, Laws of Florida.
[3] 1A Collier on Bankruptcy § 17.05 (14th ed. rev. 1976).
[4] Jaubert Bros. Inc. v. Landry, 15 So.2d 158 (La. App. 1943); Collier, note 3, at § 17.29.
[5] See Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060 (1931); Matter of Continental Midway Corp., 185 F. Supp. 867 (D.Md. 1960).
[6] Collier, note 3, at § 17.30.
[7] The record before us does not indicate whether Portland in fact has a lien on any property owned by Albritton.
[8] See, for example, John Leslie Paper Co. v. Wheeler, 23 N.D. 477, 137 N.W. 412 (1912). See also, Collier, note 3, at § 17.30.
[9] Olsen v. Nelson, 125 Minn. 286, 146 N.W. 1097, 1099 (1914).
[10] See Olsen v. Nelson, note 9 at 1099.