NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11758


PAGONA CHRISTAKIS  vs.  JEANNE D'ARC CREDIT UNION & others.[1]



Suffolk.     January 6, 2015. - May 6, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.



Lien.  Bankruptcy, Discharge.  Judgment, Default.  Practice, Civil, Execution, Default.



Civil action commenced in the Land Court Department on October 17, 2013.

The case was heard by Keith C. Long, J., on motions for summary judgment, and a motion for entry of judgment by default was also heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


David G. Baker for the plaintiff.
Sandra M. Boulay for Jeanne D'Arc Credit Union.
John Pagliaro & Martin J. Newhouse, for New England Legal Foundation, amicus curiae, submitted a brief.

_____

[1] Harvest Credit Management VII, LLC, and Citibank (South Dakota), N.A.

GANTS, C.J.  The issue on appeal is whether judicial liens on real property remain valid after the owner of the property receives a discharge under Chapter 7 of the Bankruptcy Code.  We conclude that the judicial liens survive the discharge where, as here, the Bankruptcy Court judge did not avoid them.[2]

Background.  The plaintiff, Pagona Christakis, filed a complaint in the Land Court to remove judicial liens that had attached to real property she owned in Billerica after three creditors obtained final judgments against her.  Only one creditor defendant, Jeanne D'Arc Credit Union (credit union), filed an answer.  The other two creditor defendants, Harvest Credit Management VII, LLC (Harvest), and Citibank (South Dakota), N.A. (Citibank), failed to respond.  The plaintiff moved for entry of judgment by default against Harvest and Citibank and for summary judgment against the credit union; the latter cross-moved for summary judgment.  In denying the plaintiff's motions and allowing the credit union's motion, the judge concluded that "[t]he defendants' liens remain, subject to potential review by the [B]ankruptcy [C]ourt to determine if they impair exempt property."  The judge then entered judgment in favor of all the defendants, including the defaulting

---

[2] We acknowledge the amicus brief submitted by the New England Legal Foundation.

defendants.  The plaintiff appealed, and we transferred the case
to this court on our own motion.

We summarize the relevant facts in the summary judgment
record, viewed in the light most favorable to the plaintiff.
The defendants are creditors of the plaintiff, apparently for
unpaid credit card bills.[3]  Each defendant sued the plaintiff to
collect the unpaid debt and obtained a final judgment, based on
which a writ of execution was issued, and a levy of execution
was made on the plaintiff's real property.[4]  On July 26, 2010,

---

[3] Although not disputed, the exact nature of the underlying
debt is unclear from the record.  The motion judge described it
as "apparently for unpaid credit card bills," and the plaintiff
referred to it as "what appear[s] to be credit card debts."

[4] "An execution is a process issued from a court in which a
judgment has been rendered, in a civil action, for the purpose
of carrying the judgment into effect."  Miller v. London, 294
Mass. 300, 304 (1936).  See Mass. R. Civ. P. 69, 365 Mass. 836
(1974) ("Process to enforce a judgment for the payment of money
shall be a writ of execution, unless the court directs
otherwise").

"The execution creates a lien which is then perfected by a
levy of execution."  Lyons v. Bauman, 31 Mass. App. Ct. 214, 216
(1991).  See LaChance v. Peerless Ins. Co., 36 Mass. App. Ct.
451, 453 (1994) ("A levy is the taking or seizure of property by
an officer pursuant to a writ of execution").  To levy an
execution on real property, an officer need not physically enter
the land.  See McGrath v. Worcester County Nat'l Bank, 3 Mass.
App. Ct. 599, 603 (1975) ("an overt act by the officer falling
short of an entry upon the land has been held sufficient to mark
the commencement of a levy").

Both the execution and the memorandum noting the levy
should be recorded.  See G. L. c. 236, § 4 ("the officer shall
forthwith deposit in the registry of deeds . . . a copy of the
execution with a memorandum thereon that the execution is in his

the plaintiff's bankruptcy petition was filed pursuant to Chapter 13 of the Bankruptcy Code and was subsequently converted into a Chapter 7 case on April 28, 2011.[5]  The plaintiff received a discharge in bankruptcy on August 19, 2011.  See 11 U.S.C. § 727(b) (2012) ("a discharge . . . discharges the debtor from all debts that arose before the date of the order for relief under [Chapter 7] . . .").  The plaintiff did not seek or obtain a ruling from the Bankruptcy Court avoiding any of the defendants' liens.  See 11 U.S.C. § 522(f)(1) (2012) (debtor may avoid judicial lien on debtor's interest in property to extent that lien "impairs an exemption").

Discussion.  Under Federal law, a discharge in bankruptcy "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under [11 U.S.C. § 727]" (emphasis added).  11 U.S.C. § 524(a)(1) (2012).  See

---

hands for the purpose of taking the land of the defendant").  Here, each of the defendants recorded both the execution and the memorandum in the registry of deeds and then suspended the levy; no sheriff's sale of the property was attempted.

[5] Each of the liens was perfected more than ninety days before the filing of the bankruptcy petition.  See 11 U.S.C. § 547(b) (2012) (trustee may avoid any transfer of interest of debtor made "on or within [ninety] days before the date of the filing of the petition").  Jeanne D'Arc Credit Union (credit union) recorded a writ of attachment on August 28, 2008, and subsequently obtained an execution and recorded it on June 9, 2009.  Citibank (South Dakota), N.A., recorded an execution on June 2, 2009.  Harvest Credit Management VII, LLC, registered an execution on December 21, 2009.

id. at § 524(a)(2) (discharge "operates as an injunction" against any act to collect debt "as a personal liability of the debtor"). The debt itself is not extinguished by the discharge; it remains in existence but cannot be enforced personally against the debtor. See One to One Interactive, LLC v. Landrith, 76 Mass. App. Ct. 142, 149 (2010). Essentially, "a bankruptcy discharge extinguishes only one mode of enforcing a claim -- namely, an action against the debtor in personam -- while leaving intact another -- namely, an action against the debtor in rem." Johnson v. Home State Bank, 501 U.S. 78, 84 (1991).[6] As a matter of Federal law, an unavoided, otherwise valid lien perfected prior to the bankruptcy filing "survives or passes through the bankruptcy." Id. at 83. See In re Garran, 338 F.3d 1, 5 (1st Cir. 2003) ("a judicial lien attached to property is a liability in rem, [and] it is not routinely discharged at the conclusion of the bankruptcy case"). This distinction between in personam and in rem actions "comports with the purposes of the bankruptcy process by striking a balance between the need for debtors to obtain a reprieve from

---

[6] We use the term "in rem" not in the strict sense that "it is directed against the property itself" but in the broader sense that encompasses "suits to determine the validity of mortgages or other encumbrances upon land, or to enforce liens, or to quiet the title to land," which "involve the rights of all persons in so far as they assert any interests in the property which is the subject matter of the litigation." Gulda v. Second Nat'l Bank, 323 Mass. 100, 104 (1948).

their debts, while simultaneously protecting creditors' secured property rights." United Presidential Life Ins. Co. v. Barker, 31 B.R. 145, 147 (N.D. Tex. 1983). Thus, the lien may still be enforced, but because of the discharge of personal liability, the enforcement of the lien "is an action in rem with no recourse available against the debtor for any deficiency." W. L. Norton, Bankruptcy Law and Practice § 58:4, at 58-17 (3d. ed. 2014).

Federal law does not overlook the burden that judicial liens can place on a bankrupt debtor. See Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991) ("Congress enacted [11 U.S.C. § 522(f)] with the broad purpose of protecting the debtor's exempt property"); In re Garran, 338 F.3d at 5 ("because judicial liens may interfere with the 'fresh start' the Bankruptcy Code seeks to give debtors, such liens may be avoidable under a separate provision of the Bankruptcy Code, § 522[f]"). Under 11 U.S.C. § 522(f)(1), a Bankruptcy Court judge may "avoid the fixing of a lien," including a judicial lien, "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled." See id. at § 522(f)(2) (lien deemed to impair exemption to extent that sum of lien, all other liens on property, and exemption amount "exceeds the value that the debtor's interest in the property would have in the absence of any liens"). For instance, a

debtor may be able to avoid a judicial lien on a debtor's primary residence to the extent that it impairs the homestead exemption.  See, e.g., In re Mariano, 311 B.R. 335, 340-341 (Bankr. D. Mass. 2004).

The plaintiff concedes that the defendants' liens remain valid under Federal law despite the discharge, but contends that they are invalid under Massachusetts law.  We agree with the plaintiff that "[t]he existence and nature of the lien that survives is determined by State law."  First Colonial Bank for Sav. v. Bergeron, 38 Mass. App. Ct. 136, 137 (1995).  See Cohen v. Wasserman, 238 F.2d 683, 686 (1st Cir. 1956) (validity of lien after attached property is taken by eminent domain "depends wholly upon the local law").  But we do not agree that Massachusetts law should differ from Federal law in this regard.

Massachusetts case law has long provided that liens perfected well before the filing of a bankruptcy petition remain valid after a discharge.  In Casavant v. Boreka, 298 Mass. 528, 529 (1937), we stated that "a valid lien securing [a] debt may be enforced," notwithstanding a discharge, provided the lien had attached more than the period prescribed by statute before the filing of the bankruptcy petition.[7]

---

[7] Under § 67(f) of the Bankruptcy Act of 1898, which was at issue in Casavant v. Boreka, 298 Mass. 528, 529 (1937), a lien of an attachment was dissolved if the discharged defendant filed

Our early cases also addressed whether a creditor holding an attachment on the debtor's property may obtain a special judgment to levy an execution after a discharge.  In Davenport v. Tilton, 10 Met. 320, 320, 326 (1845), the debtor obtained a discharge, but creditors already held attachments on mesne process, which constituted liens on the debtor's property.  Because the Bankruptcy Act of 1841 specifically provided for the survival of a lien after discharge, id. at 321, the main issue was whether the discharge operated "as to bar every form of judgment, and [to] deprive the attaching creditor of the power of obtaining any execution."  Id. at 328.  We held that, despite the discharge, the creditors were entitled to a special judgment to enable them to levy upon the attached property.  Id. at 331.  See Bosworth v. Pomeroy, 112 Mass. 293, 294-295 (1873) (after debtor received discharge, where creditor had valid attachment of property, creditor entitled to special judgment, "to be enforced against the property attached, and not against the person or other property of the defendant").  "The object of this [special judgment] [was] to enable the plaintiff to avail himself of an existing lien saved to him by the bankrupt law, and which cannot be enforced in any other way."  Id. at 295.  Our treatment of special judgments demonstrates that, under

the bankruptcy petition "within four months after the attachment."

State law, we distinguish between in personam and in rem actions after a discharge, and permit the latter but not the former.[8]

Other jurisdictions have also concluded that a valid lien remains enforceable after discharge.[9]  Some States, by statute,

_____

[8] By statute, Massachusetts also enables a plaintiff to seek a special judgment enforceable only against the discharged debtor's property for the amount of the debt.  G. L. c. 235, § 24, states:

"If a plaintiff would be entitled to a judgment or a decree, except for the bankruptcy or insolvency of the debtor or his discharge therein, and if, more than four months prior to the commencement of proceedings in bankruptcy, . . . any property . . . of a debtor has been attached, . . . the court may at any time upon motion enter a special judgment or decree for the plaintiff, for the amount of his debt . . . to be enforced in the first instance only against the property, estate, interest or money, so attached or brought within the control of a court of equity."

Once the bankruptcy petition is filed, any action to obtain a special judgment is stayed automatically under § 362 of the Bankruptcy Code.  See 11 U.S.C. § 362(a) (2012); Irving Levitt Co. v. Sudbury Mgt. Assocs., Inc., 19 Mass. App. Ct. 12, 15-17 (1984).

[9] See, e.g., Guttchen v. Gabriel, 49 P.3d 223, 225-226 (Alaska 2002) (discharge did not extinguish lien); Stewart v. Underwood, 146 Ariz. 145, 148-149 (Ct. App. 1985) (discharge did not extinguish debt; lien valid under State law); Rino Gnesi Co. v. Sbriglio, 98 Conn. App. 1, 12 (2006) (plaintiff could pursue "its claim to perfect the attachment lien" after defendants' discharge); Everidge v. American Sec. Corp., 464 N.E.2d 374, 376 (Ind. App. 1984) (unavoided judgment lien on real estate survives discharge); Socony Mobil Oil Co. v. Burdette, 309 So. 2d 655, 656 (La. 1975) ("It is well settled that a judicial mortgage . . . retains its viability in rem upon the incumbered property left to the bankrupt or his assignee"); Carman v. European Am. Bank & Trust Co., 78 N.Y.2d 1066, 1067 (1991) ("liens and other similar secured interests ordinarily survive bankruptcy" and under New York statutory law, debtor may have

enable a discharged debtor to seek a State court docket entry recognizing a discharge of personal liability, but those statutes have been interpreted to preserve the validity of liens obtained prior to the bankruptcy filing. See Albritton v. General Portland Cement Co., 344 So. 2d 574, 576 (Fla. 1977) (Florida statute allows debtor to clarify on record that discharged judgment no longer constitutes personal liability on debtor but "does not affect a lien which arose from the judgment prior to bankruptcy"); Ducker v. Standard Supply Co., 280 S.C. 157, 15 (1984) (discharged debtor entitled to docket entry discharging judgment as to personal liability but not as to lien upon real property).

In comparison, Wisconsin law provides that upon a debtor's application to the court, "the only thing required for satisfaction of a judgment debt and cessation of an associated judgment lien is that the underlying judgment has been discharged in bankruptcy." Megal Dev. Corp. v. Shadof, 286 Wis. 2d 105, 133 (2005). See In re Spore, 105 B.R. 476, 485 (Bankr. W.D. Wis. 1989) (Wisconsin law "provide[s] the legal basis and the legal means for debtors discharged in bankruptcy to void liens surviving bankruptcy"). But this mechanism was created by statute, not through interpretation of Wisconsin common law.

"qualified discharge" marked on docket to show that "notwithstanding the debtor-owner's discharge in bankruptcy, the property may, nonetheless, still be burdened by liens").

See Wis. Stat. Ann. § 806.19(4) (Thompson Reuters 2013) ("Any person who has secured a discharge of a judgment debt in bankruptcy . . . may submit an application for an order of satisfaction of the judgment" and "[u]pon satisfaction, a judgment shall cease to be a lien on any real property that the person discharged in bankruptcy owns or later acquires").  There is no similar statutory provision in Massachusetts.

We are not persuaded that we should alter the long-standing balance of interests between debtors and creditors, reflected in Federal law and our common law, by extinguishing both actions in personam and actions in rem against the discharged debtor.  The plaintiff contends that "a court must vacate a void judgment" pursuant to Mass. R. Civ. P. 60, 365 Mass. 828 (1974), and where a judgment is vacated, the liens resting on that judgment must be vacated as well.  See Field v. Massachusetts Gen. Hosp., 393 Mass. 117, 118 (1984).  But a discharge merely voids a judgment "to the extent that such judgment is a determination of the personal liability of the debtor."  11 U.S.C. § 524(a)(1).  Under rule 60, "[a] judgment is void if the court from which it issues lacked jurisdiction over the parties, lacked jurisdiction over the subject matter, or failed to provide due process of law."  Harris v. Sannella, 400 Mass. 392, 395 (1987).  See Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir. 1972) ("A void judgment is one which, from its

inception, was a complete nullity and without legal effect"). A discharge does not indicate that a judgment was a nullity from the start, nor does a discharge arise from a lack of jurisdiction or a failure to provide due process. The debt itself is not extinguished and would not be void as to personal liability but for the bankruptcy filing. Therefore, where a discharge only voids a judgment as to actions in personam, the liens resting on that judgment need not be invalidated, because the judgment is not void as to actions in rem. Consequently, the judge did not err in granting summary judgment to the credit union.[10]

---

[10] We also note the credit union's argument that even if a mortgage or a consensual lien survives a discharge under State law, see Pearson v. Mulloney, 289 Mass. 508, 515 (1935), a judicial lien should not receive the same treatment. Federal law distinguishes between consensual and nonconsensual liens by enabling the debtor to avoid certain judicial liens in bankruptcy. See In re Smith, 401 B.R. 674, 687 (Bankr. E.D. Pa. 2009) (Congress has demonstrated belief that consensual lienholders "are sufficiently worthy of protection that they should be provided with a shortcut, a head start . . . to collect their claims"); Cross, The Application of Section 522(f) of the Bankruptcy Code in Cases Involving Multiple Liens, 6 Bankr. Dev. J. 309, 338-339 (1989) (judicial liens avoidable because they provide "back door" means for creditors to reach exempt assets and they impair debtor's "fresh start"). Yet, there is no similar distinction between unavoided judicial liens and consensual liens when determining whether a lien survives a Chapter 7 discharge. See Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy"). See also In re Swiatek, 231 B.R. 26, 29 (Bankr. D. Del. 1999) ("The in rem aspect of a judgment is equally viable in the context of a nonconsensual lien as in that of a consensual one"). In the absence of any State law to the contrary, we see no reason to draw such a distinction.

The judge also entered judgment for Citibank and Harvest, even though they were in default.  We consider now whether the defaulting defendants were also entitled to judgment.  The entry of default means that the "well-pleaded facts" of the complaint are accepted as true.  Nancy P. v. D'Amato, 401 Mass. 516, 519 (1988).  It does not mean that the party in default is deemed to have admitted the plaintiff's conclusions of law.  See Jones v. Boykan, 464 Mass. 285, 295 (2013), citing Productora e Importadora de Papel, S.A. de C.V. v. Fleming, 376 Mass. 826, 834-835 (1978) (Productora).  In order for a judge to enter a judgment by default, the factual allegations in the complaint must be sufficient to state a claim for relief.  See Productora, supra (after default, plaintiff's factual allegations must still "constitute a legitimate cause of action" in order for judgment to enter).  If the factual allegations, accepted as true, would not permit a finding of liability, then a defaulting defendant is entitled to dismissal of the complaint despite its default.  See Nancy P., supra at 519-520 (where defendant defaulted, judge appropriately dismissed plaintiff's claim of negligent infliction of emotional distress, because facts as alleged did not state "claim for relief").  Here, even if we accept as true the facts alleged in the complaint, the defaulting defendants' liens survive the discharge as a matter of law.  We therefore

conclude that Citibank and Harvest Credit were as entitled to judgment as the credit union.

Conclusion.  The defendants' liens survived the bankruptcy discharge as a matter of Federal and State law.  Therefore, we affirm the grant of summary judgment in favor of the credit union and affirm the denial of the plaintiff's motions for summary judgment and for entry of judgment by default.  We affirm as well the entry of judgment on behalf of all the defendants.

So ordered.